ACCEPTED
15-25-00012-cv
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
3/17/2025 7:19 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00012-CV

# In the Fifteenth Court of Appeals
# Austin, Texas

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
3/17/2025 7:19:07 PM
CHRISTOPHER A. PRINE
Clerk

STATE OF TEXAS, THE TEXAS FACILITIES COMMISSION, THE TEXAS HEALTH AND HUMAN SERVICES COMMISSION, MIKE NOVAK, IN HIS OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR OF THE TFC, AND ROLLAND NILES, IN HIS OFFICIAL CAPACITY AS DEPUTY EXECUTIVE COMMISSIONER FOR THE SYSTEM SUPPORT SERVICES DIVISION OF THE TEXAS HEALTH AND HUMAN SERVICES COMMISSION,
*APPELLANTS,*

v.

8317 CROSS PARK, LLC,
*APPELLEE.*

On Appeal from Cause No. D-1-GN-23-006445
In the 98th Judicial District of Travis Count, Texas

## BRIEF OF APPELLANTS

Ken Paxton
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Ralph Molina
Deputy First Assistant Attorney General

Austin Kinghorn
Deputy Attorney General for Civil Litigation

Kimberly Gdula
Division Chief
General Litigation Division

Alyssa Bixby-Lawson
Assistant Attorney General
State Bar No. 24122680
Alyssa.Bixby-Lason@oag.texas.gov

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (210) 270-1118
Fax: (512) 474-2697

Counsel for Appellants

## Oral Argument Requested

## IDENTITY OF PARTIES AND COUNSEL

| | |
|---|---|
| **Appellants:** | The State of Texas, the Texas Facilities Commission ("TFC"), the Texas Health and Human Services Commission ("HHSC"), Mike Novak, in his Official capacity as Executive Director of the TFC, and Rolland Niles, in his Official Capacity as Deputy Executive Commissioner for the System Support Services division of HHSC |
| **Appellate and Trial Counsel for Appellants:** | Ken Paxton<br>Brent Webster<br>Ralph Molina<br>Austin Kinghorn<br>Kimberly Gdula<br>Alyssa Bixby-Lawson (lead counsel)<br>Office of the Attorney General<br>General Litigation Division<br>P.O. Box 12548/Capitol Station<br>Austin, Texas 78711-2548<br>Alyssa.Bixby-Lawson@oag.texas.gov |
| **Appellee:** | 8317 Cross Park, LLC |
| **Appellate and Trial Counsel for Appellee:** | R. Kemp Kasling<br>Law Offices of R. Kemp Kasling, P.C.<br>5511 Parkcreast Dr., Suite 110<br>Austin, Texsa 78731<br>(512) 472-6800<br>kkasling@khdalaw.com |

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ..................................................... 2

TABLE OF CONTENTS ............................................................................ 3

INDEX OF AUTHORITIES ....................................................................... 5

STATEMENT OF THE CASE ..................................................................... 8

STATEMENT REGARDING ORAL ARGUMENT ........................................ 9

ISSUES PRESENTED ............................................................................... 9

INTRODUCTION .................................................................................... 11

STATEMENT OF THE FACTS ................................................................. 13

A.    Factual History ............................................................................ 13

B.    Procedural History ....................................................................... 16

SUMMARY OF THE ARGUMENT ........................................................... 17

STANDARD OF REVIEW ....................................................................... 20

ARGUMENT .......................................................................................... 20

A.    Appellee failed to plead a valid waiver of Appellants' sovereign
      immunity because no statutory waiver exists under Chapter 114
      of the Civil Practices & Remedies Code. ..................................... 22

      1.    Chapter 114 does not waive immunity over the State. ........... 23

      2.    Chapter 114 does not waive immunity over HHSC or TFC. ........... 27

      3.    Appellee's claim is not within the scope of the limited waiver of
            sovereign immunity in Chapter 114. ........................................ 27

      4.    Chapter 271 of the Texas Local Government Code does not apply. 30

B.    The trial court has no jurisdiction to consider Appellee's
      declaratory judgment claim because it does not fall within the
      scope of the waiver provided by the UDJA. ................................. 32

C.    Appellee cannot establish jurisdiction over its *ultra vires* claim. ...... 37

      1.    Appellee has not pled facts establishing Executive Director Novak
            and Deputy Executive Commissioner Niles acted beyond the scope of
            their authority. ...................................................................... 37

      2.    Appellee has not established that Executive Director Novak or
            Deputy Executive Director Niles acted outside their legal authority. ....41

3. Appellee has failed to establish that Executive Director Novak and Deputy Executive Commissioner Niles failed to perform a purely ministerial act. .................................................................... 44

4. Appellee improperly seeks retrospective relief, which is outside the scope of the *ultra vires* exception. ....................................................... 47

CONCLUSION ...................................................................................... 49

CERTIFICATE OF SERVICE.................................................................. 50

CERTIFICATE OF COMPLIANCE............................................................51

APPENDIX ...........................................................................................51

4

# INDEX OF AUTHORITIES

Cases

*Abbott v. Mexican Am. Legis. Caucus, Tex. House of Representatives,*
  647 S.W.3d 681 (Tex. 2022) ...................................................................... 11
*Andrade v. NAACP of Austin,*
  345 S.W.3d 1 (Tex. 2011) ......................................................................... 39
Beacon Nat'l Ins. Co. v. Montemayor,
  86 S.W.3d 260 (Tex. App.—Austin 2002, no pet.) ................................. 20
*Brooks v. Northglen Ass'n,*
  141 S.W.3d 158 (Tex. 2004)..................................................................... 36
*Byrdson Servs. LLC v. South East Texas Reg. Plan. Comm'n,*
  516 S.W.3d 483 (Tex. 2016) ............................................................... 19, 29
*Chambers-Liberty Ctys. Navigation Dist. v. State,*
  575 S.W.3d 339 (Tex. 2019) ................................................................11, 21
*Chenault v. Phillips,*
  914 S.W.2d 140 (Tex. 1996)..................................................................... 37
*City of Austin v. Utility Assocs., Inc.,*
  517 S.W.3d 300 (Tex. App.—Austin 2017, pet. denied) ......................... 46
*City of Dallas v. Sabine River Auth. of Tex.,*
  03-15-00371-CV, 2017 WL 2536882 (Tex. App.—Austin June 7, 2017, no
  pet.)(mem. op.) ........................................................................................ 34
*City of El Paso,*
  284 S.W.3d ............................................................................................... 35
*City of Houston v. Houston Mun. Emps. Pension Sys.,*
  549 S.W.3d 566 (Tex. 2018) ............................................................... 41, 46
*Comm'n v. Little-Tex Insulation Co.,*
  39 S.W.3d 591 (Tex. 2001) ...................................................................... 37
*Dallas Area Rapid Transit v. Whitley,*
  104 S.W.3d 540 (Tex. 2003) .................................................................... 22
*Fed. Mar. Comm'n v. S.C. State Ports Auth.,*
  535 U.S. 743 (2002).................................................................................. 21
*Hall v. McRaven,*
  508 S.W.3d 232(Tex. 2017)........................................................... 40, 41, 43
Harlan v. Tex. Department of Insurance,
  No. 01-14-00479-CV, 2016 WL 3476914 (Tex. App.—Houston [1st Dist.]
  June 23, 2016, no pet.)( ........................................................................... 47
*Hartzell v. S.O.,*
  672 S.W.3d 304 (Tex. 2023)..................................................................... 50

*Heckman v. Williamson County,*
    369 S.W.3d 137 (Tex. 2012)......................................................................21
*Heinrich,*
    284 S.W.3d ........................................................... 12, 39, 46, 49
*Hoff,*
    153 S.W.3d (citation omitted) ..............................................................21
*Honors Acad., Inc. v. Texas Educ. Agency,*
    555 S.W.3d 54 (Tex. 2018) ................................................................ 47
*Hoppenstein Props., Inc. v. McLennan Cnty. Appraisal Dist.,*
    341 S.W.3d 16 (Tex. App.—Waco 2010, pet. denied)..............................33
*Houston Belt & Terminal Railway Co. v. City of Houston,*
    487 S.W.3d 154 (Tex. 2016)........................................................ 43, 45
*In re Smith,*
    333 S.W.3d 582 (Tex.2011) ......................................................... 43
*Klumb v. Houston Mun. Emps. Pension Sys.,*
    458 S.W.3d 1 (Tex. 2015).....................................................................11, 40
*Lone Starr Multi Theatres, Inc. v. State,*
    922 S.W.2d 295 (Tex. App.—Austin, 1996, no writ.) (citation omitted) .. 36
*Lubbock Cnty. Water Control & Imp. Dist. v. Church & Akin, L.L.C.,*
    442 S.W.3d 297 (Tex. 2014) ...............................................................30
*Narisi v. Legend Diversified Investments,*
    715 S.W.2d 49 (Tex. App.—Dallas 1986, writ ref'd n.r.e.)....................... 36
*Patel v. Tex. Dep't of Licensing and Regulation,*
    469 S.W.3d 69 (Tex. 2015) ................................................................. 35
*Regulation v. Model Search Am., Inc.,*
    953 S.W.2d 289 (Tex. App.—Austin 1997, no writ) ................................. 47
*Seminole Tribe of Fla. v. Florida,*
    517 U.S. 44, 55, 59 (1996) .............................................................. 23
*Tabrizi v. City Austin,*
    551 S.W.3d 290 (Tex. App.—El Paso 2018, no pet.) ................................41
*Tex. A & M Univ. Sys. v. Koseoglu,*
    233 S.W.3d 835 (Tex. 2007).............................................................. 23
*Tex. Dep't of Parks & Wildlife v. Miranda,*
    133 S.W.3d 217 (Tex. 2004) ...................................................... 11, 21, 22
*Tex. Dep't of Transp. v. Sefzik,*
    355 S.W.3d 618 (Tex. 2011) .........................................................passim
*Tex. Parks & Wildlife Dep't v. Sawyer Tr.,*
    354 S.W.3d 384 (Tex. 2011) .......................................................12, 19, 34
*Texas Dep't of Transp. v. Sunset Transp., Inc.,*
    357 S.W.3d 691 (Tex. App.—Austin 2011, no pet.)............................41, 42

*Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.,*
145 S.W.3d 170 (Tex. 2004) ...........................................................48
*Texas Logos, L.P. v. Texas Dep't of Transp.,*
241 S.W.3d 105 (Tex. App.—Austin 2007, no pet.)..................................35
*Town of Shady Shores v. Swanson,*
590 S.W.3d 544 (Tex. 2019) ........................................................... 11
*Univ. of Incarnate Word,*
602 S.W.3d (quotation omitted) ........................................................21, 22
*University of Texas at El Paso v. Herrera,*
322 S.W.3d 192 (Tex. 2010) ........................................................... 22
*W. Tex. Mun. Power Agency v. Republic Power Partners, L.P.,*
428 S.W.3d 299 (Tex. App.—Amarillo 2014, no pet.) .............................. 23
*Wichita Falls State Hosp. v. Taylor,*
106 S.W.3d 692 (Tex. 2003)........................................................ 22, 27

## Rules

Tex. Civ. Prac. & Rem. Code § 114.001(2) .......................................24, 26, 29
Tex. Civ. Prac. & Rem. Code § 114.001(3) ................................. 11, 18, 24, 26
Tex. Civ. Prac. & Rem. Code § 114.001, .002 ................................................. 11
Tex. Civ. Prac. & Rem. Code § 114.002 ....................................................... 26
Tex. Civ. Prac. & Rem. Code § 114.002, .003 ............................................... 34
Tex. Civ. Prac. & Rem. Code § 37.003(a) ..................................................... 35
Tex. Civ. Prac. & Rem. Code § 37.006(b).................................................... 34
Tex. Civ. Prac. & Rem. Code § 37.008......................................................38
Tex. Civ. Prac. & Rem. Code §§ 114.001(3), .002, .003 ........................ 23, 24
Tex. Gov't Code § 2167.0021 ...............................................................42, 48
Tex. Gov't Code § 2167.055(a)............................................................passim
Tex. Gov't Code § 2167.055(e)............................................................... 26
Tex. Gov't Code §§ 2167.001..............................................................25, 40
Tex. Gov't Code §523.0051...............................................................44
Tex. Gov't Code 2167.101..............................................................40, 42, 44
Tex. Loc. Gov't Code 271.152 ..............................................................32


Texas Rule of Appellate Procedure 9.4(i)(1) ............................................... 53
Texas Rule of Appellate Procedure 9.4(i)(2)............................................... 53

## STATEMENT OF THE CASE

*Nature of the Case:* This is an interlocutory appeal from a denial-in-part of Appellants' plea to the jurisdiction. CR.1121–22, 1127–31. Appellee filed an action against the State of Texas, TFC, HHSC, Executive Director Mike Novak of TFC, and Deputy Executive Commission for System Support Services Division of HHSC Rolland Niles alleging causes of action for breach of lease, *ultra vires* conduct related to the termination of the lease, and declaratory relief. CR.638–53.

*Course of Proceedings:* Appellants filed their Amended Plea to the Jurisdiction on June 17, 2024. CR.893–932. Appellants' Plea to the Jurisdiction was heard on December 18, 2024. 3RR.1.

*Trial Court Disposition:* The Honorable Judge Laurie Eiserloh, 455th Judicial District Court, Travis County, entered an Order on January 21, 2025, granting in part and denying in part Appellants' plea to the jurisdiction. CR.1121–22. Appellants timely filed their notice of interlocutory appeal on January 23, 2025, pursuant to Texas Rules of Appellate Procedure Rule 4.2. CR.1127–31.

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully request oral argument. This is an appeal of a district court's order denying in part the State of Texas and its arms' sovereign immunity from claims for breach of contract and declaratory judgment under Chapters 114 and 37 of the Texas Civil Practices & Remedies Code and the *ultra vires* exception to sovereign immunity for their executive officers' actions. The interpretation of Chapter 114 as it applies to the State of Texas as a lessee and TFC as a representative agency acting on behalf of the State and how it applies to a breach of a rental covenant is an issue of first impression. Appellants respectfully submit that oral argument will materially assist the Court in its resolution of this appeal.

## ISSUES PRESENTED

The issues presented are:

1.      Whether sovereign immunity precludes Appellee from bringing a breach of lease claim under Chapter 114 of the Texas Civil Practices & Remedies Code as it does not fall within the scope of the waiver contemplated by Chapter 114?

2.      Whether sovereign immunity precludes Appellee from bringing a Chapter 37 claim for declaratory judgment against Appellants as it does not fall within the scope of waiver contemplated by the UDJA?

3.     Whether the *ultra vires* exception to sovereign immunity applies to Appellee's claims for actions taken by the State officials in their official capacities?

**TO THE HONORABLE FIFTEENTH COURT OF APPEALS:**

Jurisdiction "is essential to the court's power to decide a case." *Klumb v. Houston Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 8 (Tex. 2015) (quoting *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)). When a governmental entity challenges subject-matter jurisdiction in a plea to the jurisdiction, as Appellants did here, courts must assure themselves of their jurisdiction. *Abbott v. Mexican Am. Legis. Caucus, Tex. House of Representatives*, 647 S.W.3d 681, 699 n.8 (Tex. 2022). That "jurisdictional inquiry may unavoidably implicate the underlying substantive merits of the case." *Chambers-Liberty Ctys. Navigation Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019). But that does not change that the "plaintiff has the burden to affirmatively demonstrate the trial court's jurisdiction." *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019).

Appellee has failed to meet that burden for several reasons. First, the State of Texas is the Lessee under the Lease and Texas Government Code 2167.055(a), and the State cannot be sued under Chapter 114 of the Texas Civil Practice and Remedies Code. Tex. Civ. Prac. & Rem. Code § 114.001(3). Chapter 114 does not waive sovereign immunity for TFC and HHSC, which are not parties to the Lease. Chapter 114 also does not waive sovereign immunity because Appellee's breach of lease claim does not fall under the limited waiver of sovereign immunity, because the lease is not a contract for goods or services, specifically engineering, architectural, or construction services. Tex. Civ. Prac. & Rem. Code § 114.001, .002.

Second, Appellee has not challenged the constitutionality of a statute or law, and Texas has not consented to suits for a declaration of rights against state entities. *Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011) ("[T]here is no general right to sue a state agency for a declaration of rights."). Texas jurisprudence is clear: declaratory judgment claims against governmental units are generally limited to declarations as to the constitutionality or invalidity of a statute or ordinance. *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 622 (Tex. 2011). Here, Appellee only seeks an interpretation of a legislative appropriation bill. Put simply, Appellee cannot create a cause of action against Appellants for which none exists, and the trial court erred by holding otherwise.

Third, Appellee fails to prove the *ultra vires* exception to sovereign immunity applies to the state officials in this suit. Each of the issues raised by Appellee in its petition relates to the exercise of discretion in how an executive agency manages its budget and allocates and distributes appropriated funds among various objectives. CR.252-53. The fact that certain state officials who work for HHSC would act within their authority to determine that the monies allocated by the Legislature in any given biennium are not sufficient to pay for a lease without sacrificing other line-item costs or expenses, does not create an *ultra vires* claim. *Heinrich*, 284 S.W.3d at 372.

Lastly, Appellee seeks an award of retrospective damages to be made whole for the completed, past, non-recurring "harm" of the termination of the Lease. The requested relief would require undoing a previous decision

made by the State to terminate the Lease, and if granted, the requested relief would involve impermissible interference by the judiciary into the affairs of HHSC and TFC, in violation of the Constitutional principle of separation of powers.

## STATEMENT OF THE FACTS

### A. Factual History

On December 13, 20011, the State of Texas entered into a lease with Dupont Cross Park Drive Limited Partnership of Travis County, Texas U.S.A. ("Dupont") for office space located at 8317 Cross Park Drive, Austin, Texas 78754 (the "Lease"). CR.5, 19. The Lease was entered into by the State of Texas (Lessee), for the occupying agency, HHSC. CR.5 The Lease was executed by an authorized representative of the General Services Commission. CR.22. Appellee is the successor in interest to Dupont and is legally entitled to enforce the terms of the Lease. CR.5, 12. The Lease commenced on September 1, 2002, with an initial term of fifteen years with renewal options set forth therein. *Id.* In 2018, the Lease was renewed for an additional ten years. Various renewals, amendments, and adjustments were executed by an authorized representative of the Texas Building and Procurement Commission and the TFC. *See, e.g.,* CR.17–61. TFC acts as an agent for the State of Texas and runs the State Leasing Services program, which procures and manages leased facilities to meet state agencies operational needs throughout the State of Texas. CR.1029.

Section 5(m) of the Lease contains a remedy in the event the Lessee fails to pay rent:

> In the event Lessee shall be in default in the payment of rentals or other charges hereunder or shall otherwise breach its covenants or obligations hereunder, and shall be and remain in default for a period of thirty (30) days after written notice from Lessor to it of such default, Lessor shall have the right and privilege of terminating this lease and declaring the same at an end, and of entering upon and taking possession of said premises, and shall have the remedies now or hereinafter provided by law for recovery of rent, repossession of the premises, and damages occasioned by such default.

CR.20. It also includes a clause that allows the Lessee to terminate the Lease:

> This lease contract is made and entered into in accordance with the provisions of Texas Government Code, Title 10, Subtitle D, and is made contingent upon the continuation of federally funded programs, or upon the availability of state funds appropriated by the Legislature, to cover the full term and cost of this lease.
>
> In the event a curtailment of federally funded programs occurs, or in the event state appropriated funds are unavailable, the General Services Commission . . . may assign another State agency to the space, or a part thereof, covered by this lease. Should the Commission be unable to find another State agency or agencies to fill, or partially fill the space, the Commission, upon written notice to the Lessor, either may terminate this lease, or adjust it in accordance with the provisions of this lease.

CR.19.

On September 9, 2022, HHSC submitted its Legislative Appropriations Request for the 2024-2025 biennium. CR.270. The request includes a lump sum request for the category "RENT-BUILDING" for the 2024 and 2025 fiscal years in the amount of $105,369,343 and $105,245,466, respectively.

CR.270. HHSC also requested additional funds for an anticipated 9.9% increase in lease costs. CR.1052.

The State's General Appropriations Act[1] appropriated amounts for "Rent – Building" for HHSC in the amount of $118,826,243 for the 2024 fiscal year and $119,751,160 for the 2025 fiscal year. CR.1053. HB 1 included a provision that $12,275,361 had been appropriated for each upcoming fiscal year for HHSC "for cost increases for state leases." CR.1054.

On June 1, 2023, TFC's Executive Director Novak sent a notice of termination of lease letter to Appellee. CR.78. The letter states the lease is being terminated "due to the non-availability of money . . . to pay for the leased premises." *Id*. The letter further states that HHSC "has directed that rent will not be certified for the biennium beginning September 1, 2023, as required by Section 2167.101, Texas Government Code."

On July 27, 2023, Deputy Executive Commissioner Niles sent a "Certification of Funds" for the 2024-25 biennium to TFC, based on Texas Government Code, Title 10, Chapter 2167, Sec., 2167.101, Certification of Available Money, "A state agency occupying space leased under this chapter shal certify to the commission, at least 60 days before the beginning of each fiscal biennium during the lease term, that money is available to pay for the leases until the end of the next fiscal biennium." CR.983. The letter states that HHSC reviewed the spreadsheet of leases provided by TFC, and that five

---

[1] HB 1 was signed into law as the State's General Appropriations Act on June 18, 2023.

leases will no longer be active after August 31, 2023, one of which is the lease at issue in this appeal. *Id.* Deputy Executive Commissioner Niles then states that the active leases total $93,767,377.36 annually for the fiscal year 2024-2025 biennium, and HHSC certifies the funds will be available for each lease—other than the five identified. *Id.*

## B.   Procedural History

Appellee filed an action against the State of Texas, TFC, HHSC, Executive Director Novak, and Deputy Executive Commissioner Niles[2] alleging causes of action for breach of lease, *ultra vires* conduct related to the termination of the lease, and declaratory relief. CR.638–53. In its petition, Appellee demands the Court order the following relief:

- declare that the 88th Texas Legislature appropriated sufficient funds to pay for the Lease;

- issue an injunction mandating Deputy Executive Commissioner Niles certify to TFC that the Legislature appropriated sufficient funds to pay the Lease;

- issue an injunction mandating Executive Director Novak withdraw the notice of termination of the Lease;

- issue an injunction mandating Executive Director Novak comply with TFC statutes;

---

[2] Appellee also sued Cecile Erwin Young, in her Official Capacity as Executive Commissioner of HHSC, and Glenn Hegar, Texas Comptroller of Public Accounts. All claims were dismissed against Young and Hegar, and they do not appeal. No cross-appeal has been filed by Appellee.

- order retroactive money damages for breach of the Lease; and

- order other fees and costs, including interest.

CR.650–51.

Appellants filed their Second Amended Plea to the Jurisdiction on March 22, 2024. CR.893–932. Appellants' Plea to the Jurisdiction was heard on December 18, 2024. 3RR.1. The Honorable Judge Laurie Eiserloh, 455th Judicial District Court, Travis County, entered an Order on January 21, 2025, granting in part and denying in part Appellant's plea to the jurisdiction. CR.1121–22. Appellants timely filed their notice of interlocutory appeal on January 23, 2025, pursuant to Texas Rules of Appellate Procedure Rule 4.2. CR.1127–31.

## SUMMARY OF THE ARGUMENT

The trial court erred in denying-in-part Appellees' plea to the jurisdiction. First, Chapter 114 of the Texas Civil Practices and Remedies Code does not waive sovereign immunity for the Lessee to the Lease, which is the State of Texas under both the terms of the contract and section 216.055(a) of the Texas Government Code. The Lease is between Appellee and the State of Texas, and the State of Texas is not a "state agency" subject to the chapter. Tex. Civ. Prac. & Rem. Code § 114.001(3). TFC and HHSC are not parties to the lease. CR.282. Therefore, there is no express waiver of immunity.

Second, Chapter 114 does not waive sovereign immunity because the breach of lease claim does not fall under the limited waiver of sovereign immunity. The lease is not a contract for goods or services, specifically

17

engineering, architectural, or construction services under Chapter 114. Appellee only seeks recovery of rent. The alleged services are indirect and attenuated and not the type of "goods and services," specifically "engineering, architectural, or construction services" contemplated by Chapter 114's waiver of immunity. *See Byrdson Servs. LLC v. South East Texas Reg. Plan. Comm'n*, 516 S.W.3d 483, 486 (Tex. 2016).

Third, sovereign immunity bars Appellee from seeking an interpretation of a legislative appropriation bill. Texas jurisprudence recognizes that declaratory judgment claims against governmental units are generally limited to declarations as to the constitutionality or invalidity of a statute or ordinance. *Swanson*, 590 S.W.3d at 552; *Tex. Parks & Wildlife*, 354 S.W.3d at 388. Claims asserted against the State and its entities under the UDJA which do not challenge the validity or constitutionality of a statute—either seeking only a declaration of rights under a statute or failing to name a particular statute and challenge its validity—remain barred by sovereign immunity. *See Sefzik*, 355 S.W.3d at 621–22. Moreover, this limited waiver only applies to "the relevant governmental entities,"—not state officials. *Id.* at 622. Here, Appellee's claim for declaratory judgment does not fall within this limited waiver because it does not challenge the constitutionality or validity of any statute, and it is brought against officials acting in their official-capacity. Accordingly, Appellee has not and cannot establish a waiver of sovereign immunity.

Lastly, Appellee has not alleged a cognizable ultra vires claim. While it may be true that in certain circumstances, sovereign immunity may be bypassed when a plaintiff brings a cognizable ultra vires action against an official-capacity defendant, Appellee has not done so here for several reasons. First, Appellee has not alleged and cannot ultimately establish facts demonstrating that Executive Director Novak and Deputy Executive Commissioner Niles acted outside of their legal authority or failed to perform a purely ministerial duty. Second, each of the issues raised by Appellee in its petition relates to the exercise of discretion in how an executive agency manages its budget and allocates and distributes appropriated funds among various objectives. The fact that certain state officials who work for HHSC would act within their authority to determine that the monies allocated by the Legislature in any given biennium are not sufficient to pay for a lease without sacrificing other line-item costs or expenses, does not make out an ultra vires claim. It was not only within their authority to make these determinations, but they were also required to under Texas law, and any argument related to such decision is Appellee's improper attempt to control the State. *Beacon Nat'l Ins. Co. v. Montemayor*, 86 S.W.3d 260, 267 (Tex. App.—Austin 2002, no pet.) ("Whether [the agency's] interpretation is correct or incorrect cannot be the factor that confers jurisdiction."). The Texas Supreme Court expressly forbids such an attempt. Lastly, to plead a valid ultra vires action, a plaintiff must be seeking only prospective injunctive relief. Here, Appellee is

seeking retroactive relief, which is insufficient to overcome immunity. CR.648–50.

The trial court erred in its interpretation and application of the relevant statutes and case law on sovereign immunity, and its decision denying Appellants' plea in part should be reversed.

## STANDARD OF REVIEW

"A plea to the jurisdiction challenges the court's authority to decide a case." *Heckman v. Williamson County*, 369 S.W.3d 137, 149 (Tex. 2012). The plaintiff bears the burden to affirmatively demonstrate the trial court's jurisdiction. *Id.* at 150. "When a plea to the jurisdiction challenges the pleadings, [the court] determine[s] if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Texas Dept. of Parks & Wildlife*, 133 S.W.3d at 226. The court must determine whether it has jurisdiction under the constitution or by statute at the earliest opportunity. *Id.* "If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." *Id.* at 227. This Court reviews the trial court's ruling on a plea to the jurisdiction *de novo. Chambers-Liberty Cnts. Navigation Dist.*, 575 S.W.3d at 345.

## ARGUMENT

Sovereign immunity "protects nonconsenting states from being sued in their own courts for federal law claims." *Hoff*, 153 S.W.3d at 48 (citation omitted). "Sovereign immunity is 'inherent' in Texas statehood and

20

'developed without any legislative or constitutional enactment.'" *Univ. of Incarnate Word*, 602 S.W.3d at 403-04 (quotation omitted). "The preeminent purpose of state sovereign immunity is to accord States the dignity that is consistent with their status as sovereign entities." *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002). Sovereign immunity also preserves the separation of powers, "protects the public treasury," and "prevent[s] potential disruptions of key government services that could occur when government funds are unexpectedly and substantially diverted by litigation." *Univ. of Incarnate Word*, 602 S.W.3d at 404.

Sovereign immunity deprives a trial court of subject-matter jurisdiction in lawsuits against the state unless the state consents to suit. *Miranda*, 133 S.W.3d at 224. "In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). Agencies of the State of Texas are sovereign entities and, therefore, immune from suit absent express legislative consent. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694-95 (Tex. 2003). Immunity from suit extends to the officers of sovereign entities. *Id.*

Here, the State of Texas, HHSC, TFC, Executive Director Novak, and Deputy Executive Commissioner Niles enjoy immunity from suit and liability absent express consent to the contrary. Therefore, in order to establish the trial court's jurisdiction, Appellee bears the burden of establishing a waiver or exception to each Appellants' sovereign immunity.

Sovereign immunity can be waived in one of two ways: "(1) Congress validly abrogates it, or (2) the State voluntarily waives it." *University of Texas at El Paso v. Herrera*, 322 S.W.3d 192, 195 (Tex. 2010). A Congressional abrogation of sovereign immunity is only valid "provided Congress (1) unequivocally expresses its intent to do so, and (2) acts 'pursuant to a constitutional provision granting Congress the power to abrogate.'" *Id.* (quoting *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55, 59 (1996)).

Any ambiguity in language should be resolved in favor of retaining immunity for the State of Texas, as well as its agencies and officials. *See W. Tex. Mun. Power Agency v. Republic Power Partners, L.P.*, 428 S.W.3d 299, 305 (Tex. App.—Amarillo 2014, no pet.).

## A. Appellee failed to plead a valid waiver of Appellants' sovereign immunity because no statutory waiver exists under Chapter 114 of the Civil Practices & Remedies Code.

Chapter 114 neither waives sovereign immunity nor entitles Appellee to the relief it seeks. Appellee asserts a claim for "Breach of Lease" against the State of Texas, TFC, and HHSC, which Appellee collectively refers to as "State Lessee Entities." CR.647. But Appellee's breach of lease claim is unquestionably barred by sovereign immunity. *See, e.g., Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007) (sovereign immunity bars breach of contract claims) ("[A]bsent special statutory permission, a party cannot pursue a breach of contract action against the State without first obtaining consent from the Legislature.").

Chapter 114 of the Texas Civil Practice and Remedies Code explicitly "waives immunity" for a "state agency that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this chapter." Tex. Civ. Prac. & Rem. Code §§ 114.001(3), .002, .003. But at the same time, the statute attaches the waiver to "a claim for breach of an express provision of the contract." *Id.* § 114.003. The immunity waiver is also "subject to [Chapter 114's] terms and conditions." *Id.*

Chapter 114 defines "contract subject to this chapter" as "a written contract stating the essential terms of the agreement for providing goods or services to the state agency that is properly executed on behalf of the state agency." Tex. Civ. Prac. & Rem. Code § 114.001(2). It further defines a "state agency" to mean:

> [A]n agency, department, commission, bureau, board, office, council, court, or other entity that is in any branch of state government and that is created by the constitution or a statute of this state, including a university system or a system of higher education. The term does not include a county, municipality, court of a county or municipality, special purpose district, or other political subdivision of this state.

*Id.* § 114.001(3).

## 1. Chapter 114 does not waive immunity over the State.

The Act waives immunity over "[a] state agency" that is "authorized by statute or the constitution to enter into a contract" *and* "enters into a contract subject to the chapter." Tex. Civ. Prac. & Rem. Code §§ 114.001(3), .002, .003. Before even getting to the question of whether the Lease is a "contract"

subject to this chapter," this Court must determine whether the specific state Appellees—the State, TFC, and HHSC—are state agencies subject to the waiver.

In this case, Appellee alleges the Lease was "executed by a state agency and on behalf of a state agency," and more specifically that the "State of Texas, as lessee, acting by and through the State of Texas General Services Commission entered into the Lease" for HHSC to occupy the premises. CR.641. But that inaccurate allegation ignores the reality of *who* the actual LESSEE is: the State of Texas. Only the State is "authorized by statute or the constitution to enter into [this] contract." Tex. Gov't Code § 2167.055(a). The State of Texas is not a "state agency" under the definition of Section 114.001(3), and thus not subject to the waiver of immunity of the Chapter.[3] Similarly, Appellee has no contractual relationship with HHSC or TFC for which to assert a breach of contract claim, because the Lease is specifically with the State of Texas (the only state entity legally capable of entering into a lease). Accordingly, there is no waiver of sovereign immunity over the State, HHSC, or TFC for Appellee's Chapter 114 claims.

The original lease was entered into between:

---

[3] To the extent the Lease is inconsistent in its usage of how it uses the terms Lessee and "State of Texas," it does not transform the fact that the Lease is plainly between Appellee and the State of Texas, regardless of the entity that may inure a benefit, that only the State of Texas can enter into a lease, and the State of Texas is not a "state agency" under the plain meaning of Chapter 114.001(3).

> LESSOR, Dupont Cross Park Drive, Limited Partnership, of Travis County, Texas, U.S.A. and LESSEE, STATE OF TEXAS.

CR.19. Similarly, Chapter 2167 of the Texas Government Code governs "Lease of Space for State Agencies." Tex. Gov't Code §§ 2167.001 *et seq.*; *see also* CR.641. Section 2167.055 explicitly states that in a contract for the commission of a lease of space, it is the State that is the lessee. Tex. Gov't Code § 2167.055(a). The State acts "by and through" TFC. *Id.* And that lease contract is contingent on the availability of money appropriated by the Legislature to pay for the lease. Tex. Gov't Code § 2167.055(e).

Chapter 114 applies "*only* to a claim for breach of a written contract for engineering, architectural, or construction services or for materials related to engineering, architectural, or construction services brought by a party to the written contract, in which the amount in controversy is not less than $250,000[.]" Tex. Civ. Prac. & Rem. Code § 114.002 (emphasis added). Chapter 114 defines "contract subject to this chapter" as "a written contract stating the essential terms of the agreement for providing goods or services to the state agency that is properly executed on behalf of the state agency." Tex. Civ. Prac. & Rem. Code § 114.001(2). It further defines a "state agency" to mean:

> an agency, department, commission, bureau, board, office, council, court, or other entity that is in any branch of state government and that is created by the constitution or a statute of this state, including a university system or a system of higher education. The term does not include a county, municipality, court of a county or municipality, special purpose district, or other political subdivision of this state.

25

*Id*. § 114.001(3). The chapter explicitly "waives immunity" for a "state agency that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this chapter" for the "purpose of adjudicating a claim for breach of an express provision of the contract, subject to the terms and conditions of this chapter." § 114.003. Thus, sovereign immunity is waived only when a state agency enters into a written contract wherein the essential terms are to provide goods or services in the context of engineering, architectural or construction services or for materials related thereto in an amount not less than $250,000.

As the Lease clearly provides, the only entities entering into the contract are Appellee and the State of Texas. The State itself is certainly not a "state agency" subject to this chapter. If the Legislature intended for the State to be included in Chapter 114, it would have either stated that intention expressly or incorporated it in the definition of state agencies. [4] The State and its entities are sovereign for purposes of immunity. Because the State is not

---

[4] The Texas Supreme Court has found a "reliable guidepost to determine if the Legislature intended to waive immunity when its intent is less clear." *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 701 (Tex. 2003), judgment withdrawn and reissued (May 13, 2003). In particular, the Court noted that in many statutes waiving sovereign immunity explicitly, the Legislature "appends a measure designed to protect the public treasury from the consequence of that waiver." *Id*. at 701, n.9. The Court's decisions recognizing a waiver of immunity "have generally left undisturbed the Legislature's interest in protecting the State's financial resources." *Id*. at 701. Accordingly, the Legislature has an interest in *not* including the State in the limited waiver of sovereign immunity in Chapter 114 over breach of lease claims.

a state agency, as contemplated by Chapter 114, it is not subject to Chapter 114. Accordingly, there is no express Legislative waiver of immunity over the State of Texas and this claim must be dismissed against the State.

**2. Chapter 114 does not waive immunity over HHSC or TFC.**

There is no waiver of sovereign immunity over HHSC and TFC because they are not parties to the Lease and, therefore, there is no basis for bringing a breach of lease claim under Chapter 114. As stated above, Chapter 114 only waives immunity for a "state agency that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this chapter," and neither TFC (as the agent) nor HHSC (as the occupying agency) has a contract with Appellee. CR.282. Further, according to Texas Government Code § 2167.055(a), a state agency is not authorized to enter into a contract for the lease of space—only the State of Texas is authorized to enter into a contract as the lessee. Because Appellee has no contractual relationship with HHSC or TFC for which to assert a breach of claim, Appellee cannot assert a claim under Chapter 114 against HHSC or TFC and there is no waiver of immunity.

**3. Appellee's claim is not within the scope of the limited waiver of sovereign immunity in Chapter 114.**

Here, there is not only a question of whether a clear and unambiguous immunity waiver exists against the State, HHSC, and TFC (it does not), but also whether Appellee's breach of lease allegations and damages fall within the scope of the express statutory waiver of Chapter 114 (they do not).

Appellee alleges that the Lease in question is a contract for construction services that falls within the scope of the waiver of Section 114.002. CR.648. Even if the Lease met the requirements of section 114.003, it cannot meet the requirements of section 114.001(2). Section 114.001(2) defines "contract subject to this chapter" as a "written contract . . . for providing goods or services to the state agency that is properly executed on behalf of the state agency." Tex. Civ. Prac. & Rem. Code § 114.001(2).

Appellee seeks "a judgment against the State Lessee for the monetary damages [Appellee] has incurred that were proximately caused by its unexcused breach of the [Appellee] Lease" (i.e., recovery of rent from a lease). *See* CR.651. A lease for square footage in an office building is not a contract "for providing goods or services" within the meaning of Chapter 114. Any alleged "services" at issue here, such as ensuring off-street parking is available and maintaining the building so that it remains inhabitable, are indirect and attenuated, at best, and are not the type of "goods and services" contemplated by Chapter 114's waiver of immunity. *Cf. Byrdson*, 516 S.W.3d at 486 (acknowledging that a contract covered by the immunity waiver in Chapter 271 applicable to a local governmental entity must provide more than an indirect benefit to the governmental entity to waive immunity). Further, although the courts generally construe the provision of goods and services broadly, "waiver will typically apply only to contracts in which the governmental entity agrees to pay the claimant for the goods and services that the claimant agrees to provide to the governmental entity." *Lubbock Cnty. Water Control*

*& Imp. Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 304–05 (Tex. 2014).

Where the lease agreement contains no terms in which the governmental entity agrees to pay the lessor for its "services," there is no amount due and owed under the contract, as is the case here. *See id.*

Similarly, the plain text of Section 114.002 further limits any waiver of immunity, as a claim must (i) fall within the limited categories of contracts ("engineering, architectural or construction services"), (ii) be "brought by a party to the written contract," (iii) be in excess of $250,000, and (iv) relate to a "breach of an express provision of the contract." Tex. Civ. Prac. & Rem. Code §§ 114.002-.003. Specifically, Chapter 114 states that it "applies only to a claim for breach of a written contract for engineering, architectural, or construction services or for materials related to engineering, architectural, or construction services brought by a party to the written contract[.]" *Id.* § 114.002. In this case, the contract is for a rental agreement for office space, not engineering, architectural, construction services. *See* CR.19. The purpose of the Lease is to lease the specified space; to the extent HHSC or TFC could be found to be "parties" to the contract (they are not), Appellee has not identified an express provision that was breached that would fall within the limited categories (engineering, architectural, construction services) and be in excess of $250,000.[5] Appellee's claim is simply not within the limited waiver

---

[5] Unlike Chapter 271 of the Texas Local Government Code, which waives immunity for breach of contract upon execution of a contract, Chapter 114 governs adjudication of claims for "breach of an express provision of the

of sovereign immunity in Chapter 114. The State of Texas, HHSC, and TFC have not consented to suit, and the Legislature has not waived their immunity. Thus, the district court erred in deny Appellants' plea to the jurisdiction over Appellee's breach of lease claim.

## 4. Chapter 271 of the Texas Local Government Code does not apply.

Chapter 271 of the Texas Local Government code neither waives immunity over or applies to the State and its agencies.

Chapter 271 specifically waives immunity from contract suits *for local governmental entities*. Tex. Loc. Gov't Code 271.152. Section 271.152 of the Act states:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into *a contract subject to this subchapter* waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, *subject to the terms and conditions of this subchapter*.

*Id.* (emphasis added). A "contract subject to this subchapter" includes "a written contract stating the essential terms of the agreement for providing goods or services *to the local governmental entity* that is properly executed *on behalf of the local governmental entity*." *Id.* § 271.151(2)(A) (emphasis added).

---

contract." Tex. Civ. Prac. & Rem. Code § 114.003. Strict application of the plain language of the statute is necessary, or else it becomes meaningless. Therefore, it is insufficient to merely allege breach of contract; a plaintiff must point to an express provision that was allegedly breached.

Appellant claims that because the "relevant portions of the two statutes are essentially identical," Texas caselaw interpreting Chapter 271 (in the local government context) is instructive when applying the provisions of Chapter 114 (in the state agency context). CR.1059. However, when it comes to an issue of waiver, cardinal rules of statutory construction demonstrate there is no need to "contextualize" the plain terms of Chapter 114 by looking to a completely different Act such as Chapter 271. Nevertheless, Appellee relies on the *Hoppenstein* case out of the Waco Court of Appeals, to argue that the design and construction services provided in this Lease should waive the State's immunity for breach of the Lease under Chapter 114. CR.1060–61 (citing *Hoppenstein Props., Inc. v. McLennan Cnty. Appraisal Dist.*, 341 S.W.3d 16, 20 (Tex. App.—Waco 2010, pet. denied).[6]

In *Hoppenstein,* the appraisal district contracted with Hoppenstein in a specific construction addendum to renovate the premises, and the court found the lease therefore entailed provisions of services within the meaning of Chapter 271. *Hoppenstein* is not binding authority on this Court, and it also did not interpret and is not applicable to the language and requirements of Chapter 114 related to state entities. Sections 114.002 and .003 require the breach of an "express provision of the contract" relating to "engineering,

---

[6] Notably, there are no cases to support Appellee's claims because the clear language of Chapter 114 is limited to state agencies entering contracts for goods and services and are not applicable to leases for real property which are similarly limited in that only the State of Texas may enter into such a lease. Tex. Gov't Code § 2167.055(a).

architectural, or construction services" or materials used therein. Tex. Civ. Prac. & Rem. Code § 114.002, .003. Appellee argues that the Lease in this case is for services based on providing janitorial service and supplies, maintaining the exterior of the building and grounds, and providing pest control services and building maintenance services. CR.642–43. But that does not transform a contract for rent/lease into a contract for construction. And Appellee cannot show that Appellants failed to pay the benefit of the bargain for any construction or services rendered under the Lease at any specific time before termination. The only specific provisions of the contract alleged to be breached are current rental payments due, not related to previous design or service obligations. Therefore, the Lease does not fall under the limited waiver of immunity under Chapter 114.

## B. The trial court has no jurisdiction to consider Appellee's declaratory judgment claim because it does not fall within the scope of the waiver provided by the UDJA.

To the extent Appellee argues that the UDJA waives sovereign immunity, such argument fails. *See* CR.647. In enacting the UDJA, sovereign immunity was only waived for claims challenging the validity or constitutionality of a statute or ordinance. *See, e.g., City of Dallas v. Sabine River Auth. of Tex.*, 03-15-00371-CV, 2017 WL 2536882, at *4 (Tex. App.—Austin June 7, 2017, no pet.)(mem. op.); *see also* Tex. Civ. Prac. & Rem. Code § 37.006(b). This narrow waiver does not extend to claims seeking a declaration of rights. *See, e.g., Tex. Parks & Wildlife Dep't*, 354 S.W.3d at 388; *Sefzik*, 355 S.W.3d at 621–22. "The UDJA does not create or augment a trial court's subject-

matter jurisdiction—it merely provides a remedy where subject-matter jurisdiction already exists." *Texas Logos, L.P. v. Texas Dep't of Transp.*, 241 S.W.3d 105, 114 (Tex. App.—Austin 2007, no pet.) (citing Tex. Civ. Prac. & Rem. Code § 37.003(a)).

### 1. Appellee's declaratory judgment claim is barred by sovereign immunity because it does not challenge the validity or constitutionality of a statute.

Here, Appellee seeks a declaratory judgment that the 88th Texas Legislature appropriated funds to pay rent to Appellee to satisfy the State' obligations under the Lease for the 2024 and 2025 fiscal years. CR.647. This claim does not fall within the scope of the waiver of sovereign immunity for UDJA claims against the State and its entities, because it does not include a challenge to the validity or constitutionality of a statute.

The Texas Supreme Court has explained that sovereign immunity does not bar suits against the State challenging the constitutionality of a statute and seeking only equitable relief. *See Patel v. Tex. Dep't of Licensing and Regulation*, 469 S.W.3d 69, 75–76 (Tex. 2015); *see also City of El Paso*, 284 S.W.3d at 372–73, n.6 (holding that the UDJA waives sovereign immunity for claims challenging the validity of statutes). Conversely, claims asserted against the State under the UDJA which do not challenge the validity or constitutionality of a statute—either seeking only a declaration of rights under a statute or failing to name a particular statute and challenge its validity—remain barred by sovereign immunity. *See Sefzik*, 355 S.W.3d at 621–22.

Here, Appellee does not challenge the constitutionality or validity of any statute, but instead only seeks a declaration that the 88th Texas Legislature appropriated funds to pay rent to Appellee. As such, there is no waiver of immunity, and the trial court erred by denying Appellants' request to dismiss this claim for want of jurisdiction.

## 2. Appellee has not pled a declaratory judgment action that would resolve the judicial controversy.

The trial court is also without jurisdiction of Appellee's UDJA claim because the requested declaratory judgment would not resolve the underlying controversy.

A declaratory judgment requires a judicial controversy as to the rights and status of parties actually before the court for adjudication, and the declaration sought must actually resolve the controversy." *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163–64 (Tex. 2004). Otherwise, the judgment amounts to nothing more than an advisory opinion, which a court does not have the power to give. *Lone Starr Multi Theatres, Inc. v. State*, 922 S.W.2d 295, 297 (Tex. App.—Austin, 1996, no writ.) (citation omitted).

Furthermore, permitting a declaration that seeks to resolve issues already raised by a claim, such as Appellee's breach of lease claim, is an improper exercise of discretion. Texas courts have consistently rejected declaratory judgment claims that seek the resolution of matters that will already be resolved as part of the claims in the lawsuit. *See, e.g., Narisi v. Legend Diversified Investments*, 715 S.W.2d 49, 51 (Tex. App.—Dallas 1986, writ ref'd

n.r.e.) ("[T]he legislature did not intend to authorize defendants to bring a declaratory judgment action to determine rights already subject to determination in a pending suit.").

It is well-settled that the UDJA does not in and of itself provide subject-matter jurisdiction. *Chenault v. Phillips*, 914 S.W.2d 140, 141 (Tex. 1996) (holding UDJA is only a procedural device for deciding matters already within a court's subject matter jurisdiction). Thus, other than as specifically allowed, the UDJA does not allow parties to circumvent the State's sovereign immunity by re-characterizing a barred suit as one that is not. *See Sefzik*, 355 S.W.3d at 621–22. Thus, immunity will bar even an otherwise proper declaratory relief suit that has the effect of establishing a right to relief against the State or its political subdivisions for which the Legislature has not waived immunity. *See id.* at 622.

Appellee cannot maintain a cause of action for declaratory relief to establish factual elements of a breach of contract claim that is barred by sovereign immunity. Sovereign immunity bars a breach of contract claim and private parties cannot circumvent the State's sovereign immunity from suit by characterizing a contract dispute as a declaratory judgment claim. *Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 597 (Tex. 2001). Here, Appellee's declaratory judgment action asks the Court to declare that the 88th Texas Legislature appropriated funds to pay rent to Appellee to satisfy the States's alleged obligations under the Lease for the 2024 and 2025 fiscal years.

CR.647. This is merely one issue of Appellee's breach of lease claim and, as a result, does not resolve the immediate controversy between the parties.

In fact, even if this Court issued an order with this declaration, the Court's judgment would not offer Appellee any type of redress or affect the legal relationship of the parties, as the issue of the contractual obligations of the parties, among other issues, still remains part of its barred breach of lease claim. As a result, Appellee's request for a declaration would require this Court to issue an improper advisory opinion. Section 37.008 of the UDJA contemplates such situations, providing:

> The court may refuse to render or enter a declaratory judgment or decree if the judgment or decree would not terminate the uncertainty or controversy giving rise to the proceeding.

Tex. Civ. Prac. & Rem. Code § 37.008. However, the Court need not rely on Section 37.008 because Appellee's request for declaratory relief against Appellants is barred by sovereign immunity. Accordingly, the claim must be dismissed for want of jurisdiction.

3. **Appellee has not pled a valid declaratory judgment action against Executive Director Novak and Deputy Executive Commissioner Niles.**

The trial court is also without jurisdiction to reach the claim as to Executive Director Novak and Deputy Executive Commissioner Niles because such a claim may only be brought against the agency itself, not a state official, and the Legislature has not waived sovereign immunity for all actions against the State that might fall within its scope, but only those claims against the

sovereign entity itself. *Sefzik*, 355 S.W.3d at 621, 622, n.3. Because Appellee's UDJA claim is brought against all Appellees, not just the entities themselves, sovereign immunity is not waived as to the UDJA claim against Executive Director Novak and Deputy Executive Commissioner Niles.

## C. Appellee cannot establish jurisdiction over its *ultra vires* claim.

While Appellee's breach of lease and UDJA claims do not fall within the limited and narrow waiver contemplated by Chapter 114 of the Civil Practices & Remedies Code and the UDJA, Appellee argues that the *ultra vires* exception to sovereign immunity nonetheless applies to Executive Director Novak and Deputy Executive Commissioner Niles for actions related to the termination of the Lease. CR.649–50. This exception to sovereign immunity applies to claims that a governmental official acted without lawful authority or failed to perform a purely ministerial act. The Supreme Court has articulated that "[n]otwithstanding sovereign immunity, Texas law recognizes 'ultra vires' claims seeking prospective injunctive relief against individual government officials in their official capacities." *Heinrich*, 284 S.W.3d at 373, 376.

### 1. Appellee has not pled facts establishing Executive Director Novak and Deputy Executive Commissioner Niles acted beyond the scope of their authority.

*Ultra vires* claims are a rare exception to a state's immunity. "To fall within this ultra vires exception, a suit . . . must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.* at 372. If the plaintiff has not actually alleged such an

action, the claims remain jurisdictionally barred. *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 11 (Tex. 2011) ("[Defendant official] retains immunity from suit unless the [plaintiffs] have pleaded a viable claim."). "While it is true that sovereign immunity does not bar a suit to vindicate constitutional rights, immunity from suit is not waived if the constitutional claims are facially invalid." *Klumb*, 458 S.W.3d at 13 (internal citations omitted). Alternativity said, where an official-capacity defendant acts within his legal authority, he is entitled to sovereign immunity. *See Hall v. McRaven*, 508 S.W.3d 232, 240–41 (Tex. 2017). Under this standard, Appellee has not pled a viable claim.

Chapter 2167 of the Texas Government Code governs "Lease of Space for State Agencies." Tex. Gov't Code 2167.001 *et seq*. Section 2167.055(e) states that "a lease contract is contingent on the availability of money appropriated by the legislature to pay for the lease." Section 2167.101 further states that a "state agency occupying space leased under this chapter shall certify to the commission . . . that money is available to pay for the lease until the end of the next fiscal biennium." Tex. Gov't Code 2167.101.

Appellee alleges that Deputy Executive Commissioner Niles "wrongfully failed to certify" to TFC that funds were in fact available to fund the Lease. CR.649. Appellee further seeks an injunction mandating Executive Director Novak comply with his alleged "non-discretionary statutory obligations to instruct that rent be paid under the Lease for the 2024-2025 fiscal years." CR.650. Appellee also alleges Executive Director Novak did not comply with TFC's own rules for terminating a lease. CR.649.

These allegations are insufficient to establish the Court's subject matter jurisdiction because "merely asserting legal conclusions or labeling a defendant's actions as 'ultra vires,' 'illegal,' or 'unconstitutional' does not suffice to plead an ultra vires claim—what matters is whether the *facts* alleged constitute actions beyond the governmental actor's statutory authority, properly construed." *Texas Dep't of Transp. v. Sunset Transp., Inc.*, 357 S.W.3d 691, 702 (Tex. App.—Austin 2011, no pet.) (emphasis in original); *Tabrizi v. City Austin*, 551 S.W.3d 290, 305 (Tex. App.—El Paso 2018, no pet.) (holding the that the trial court lacked subject-matter jurisdiction because the pleaded facts did not allege viable *ultra vires* claim).

"Ultra vires claims depend on the scope of a state official's authority." *Hall*, 508 S.W.3d at 234. As such and contrary to Appellee's belief, the natural starting point in this case is HHSC's governing authority. *See contra*, CR.649–50 (seeking an injunction mandating Deputy Executive Commissioner Niles comply with his "non-discretionary statutory obligations to certify the availability of funds" and seeking an injunction mandating Executive Director Novak retract the alleged wrongful termination of the Lease and comply with his "non-discretionary statutory obligations to instruct that rend by paid" under the Lease").

Neither section of Chapter 2167 explains when, whether, or how that money is determined to be "available" "to pay for the lease" with such "precision and certainty as to leave nothing to the exercise of discretion or judgment." *City of Houston v. Houston Mun. Emps. Pension Sys.*, 549 S.W.3d

566, 576 (Tex. 2018). Appellee has not pled that Deputy Executive Commissioner Niles made the decision that funds were unavailable to pay the rent under the Lease for the 2024-25 fiscal years. But once HHSC determined that funds were unavailable to pay rent under the Lease, Deputy Executive Commissioner Niles was obligated to certify that the funds were not available. Tex. Gov't Code § 2167.101. To the extent Appellee implies that Deputy Executive Commissioner Niles's actions impute the funding determination to an action he made, Appellee has not and cannot allege that the determination of the "availability" or "lack of funding" available to pay for the lease is non-discretionary and thus falling under the *ultra vires* exception to Deputy Executive Commissioner Niles's sovereign immunity.

Further, Executive Director Novak simply carried out the actions within his authority to complete the action—terminating the Lease[7]—after HHSC made the determination. Appellee makes no allegation that Executive Director Novak was involved in the decision that funds were not appropriated for this Lease. If funds were not appropriated pursuant to section 2167.101, TFC could terminate the Lease. But even so, TFC has an obligation and the discretion—required by the Legislature—through section 2167.0021, to make leasing decisions on the basis of obtaining best value for the state. Tex. Gov't

---

[7] Despite arguing Executive Director Novak failed to follow TFC rules, Appellee cannot reasonably argue that the provision of the Lease, which makes the Lease contingent upon the continuation of availability of money appropriated by the Legislature to pay the lease, did not put Appellee on notice at least six-months prior to the termination of the Lease. CR.649.

Code § 2167.0021. Simply pleading that the action is "non-discretionary" does not make it so. *Texas Dep't of Transp.*, 357 S.W.3d at 702. Executive Director Novak was acting within his discretion when he provided the termination notice for the Lease, and his interpretation cannot be made the basis of an *ultra vires* action. To hold otherwise would thwart the Legislature's goal in enacting section 2167.0021.

**2. Appellee has not established that Executive Director Novak or Deputy Executive Director Niles acted outside their legal authority.**

"An ultra vires claim based on actions taken 'without legal authority' has two fundamental components: (1) authority giving the official some (but not absolute) discretion to act and (2) conduct outside of that authority." *Hall*, 508 S.W.3d at 239. A government officer acts without legal authority if he exceeds the bounds of his granted authority or if his acts conflict with the law itself. *Houston Belt & Terminal Railway Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016). In such cases then, *"ultra vires* claims depend on the scope of the state official's authority." *Hall*, 508 S.W.3d at 234. Consequently, the standard for an *ultra vires* act is whether it was done without legal authority, not whether it was correct. *Id.* Likewise, it is *not* an *ultra vires* act for a government official to make a decision or to act within his or her authority in a manner that differs from the way others might have acted with similar authority.

When such absolute discretion—free decision-making without any constraints—is granted, *ultra vires* suits are absolutely barred. However, as a

general rule, "a public officer has no discretion or authority to misinterpret the law." *Cf. In re Smith,* 333 S.W.3d 582, 585 (Tex. 2011) (orig. proceeding).

The question is thus whether Executive Director Novak and Deputy Executive Commissioner Niles had the discretion to take the actions taken, including whether HHSC officials had the discretion to determine how to spend the general "lease" funds appropriated by the Legislature. Appellee alleges no facts that any individual at HHSC violated any law or was restricted from making a determination that the funds it requested and received from the Legislature's Appropriation Bill are or are not sufficient to cover any particular state agency line item. In fact, Appellee's petition does not challenge HHSC's discretion to determine whether funds are appropriated—it only challenges the agency's interpretation of the appropriation bill and actions based on that determination. CR.648–50.

Each of the alleged *ultra vires* actions depend on a determination by HHSC on how to balance its budget and allocate the funds it received from the Legislature. For example, the only alleged action taken by Deputy Executive Commissioner Niles is that he had to certify to TFC if funds were available. *See* Tex. Gov't Code §523.0051; *see also* § 2167.101. Once a determination was made by HHSC that, in its discretion, funds were not available, a fact that Appellee does not allege as violating any particular law, then Deputy Executive Commissioner Niles was required to act within his authority and certify saying as much. *Id.* Similarly, Executive Director Novak was

42

authorized to send a notice of termination of the Lease upon HHSC's determination that the Legislature had failed to fund it. *Id.*

Appellee argues that it is "nonsensical to read Section 2167.101 to allow a state agency to cause a lease termination by simply failing to truthfully report on the funds that have been made available to the agency to pay for a lease." CR.1068. But Appellee ignores that the Legislature has given agencies discretion to effectively manage their budgets and allocate appropriations. Appellee's Lease is not a line item on the General Appropriations Act for which the Legislature specifically allocates funding; instead, the Legislature provides set funds for a specific program or general funding need (like leases, generally) and HHSC is granted the discretion to determine the best use of those funds within the allotted program or funding area. *See* CR.645 (citing HB 1 showing HHSC amounts appropriated for "Rent – Building"). Every alleged *ultra vires* action alleged by Appellee depends on the fundamental discretion of HHSC (as well as other state agencies) to make this determination. Appellee has not alleged any cause of action challenging that determination as violating the law. And as to Appellee's argument that the actions of Executive Director Novak and Deputy Executive Commissioner Niles are only entitled to "limited" discretion, the Texas Supreme Court has continued to hold that merely alleging an official's discretion is limited will not be sufficient to avoid dismissal. As the Court noted in *Houston Belt & Terminal Railway Co. v. City of Houston*, "many legislative grants of authority,

although not absolute, will be broad enough to bar most, if not all, allegedly *ultra vires* claims." 487 S.W.3d at 158.

Each of these alleged *ultra vires* actions stem from an action by HHSC to determine whether the Legislature appropriated funds to pay the particular Lease, a determination that HHSC has discretion over.

### 3. Appellee has failed to establish that Executive Director Novak and Deputy Executive Commissioner Niles failed to perform a purely ministerial act.

An *ultra vires* claim can also stem from a state official's failure to perform a purely ministerial act. *Heinrich*, 284 S.W.3d at 372. "Ministerial acts are those where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *City of Houston*, 549 S.W.3d at 576 (quotation omitted). "Conversely, discretionary acts are those that require the exercise of judgment and personal deliberation." *Id.* "A writ of mandamus can be used to compel a public official to perform a 'ministerial act,' which, for purposes of mandamus, is an act where 'the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion.'" *Id.* at 577 (quotation omitted).

Moreover, an allegation that a state officer made an administrative agency decision that is erroneous, or an incorrect interpretation of law is not an allegation of an action or "conduct" that exceeds the bounds of one's authority; it therefore cannot form the basis of an *ultra vires* claim. *See City of Austin v. Utility Assocs., Inc.*, 517 S.W.3d 300, 310 (Tex. App.—Austin 2017,

pet. denied) ("Where, as here, a governmental body has been delegated authority to make some sort of decision or determination, immunity jurisprudence has long emphasized a critical distinction between alleged acts of that body that are truly ultra vires of its decision-maker authority, and are therefore not shielded by immunity, and complaints that the body merely 'got it wrong' while acting within this authority, which are shielded."); *Tex. Comm'n of Licensing & Regulation v. Model Search Am., Inc.*, 953 S.W.2d 289, 292 (Tex. App.—Austin 1997, no writ) (explaining that claiming an agency had authority to interpret statute but had interpreted provision incorrectly was insufficient to invoke *ultra vires* exception because the possibility that the agency might interpret the provision incorrectly did not destroy its authority to make that determination).

The Texas Supreme Court has held that a cognizable *ultra vires* claim must challenge the government official's authority to decide, not the correctness of the official's decision. *Honors Acad., Inc. v. Texas Educ. Agency*, 555 S.W.3d 54, 68 (Tex. 2018). For example, in *Harlan v. Tex. Department of Insurance*, a plaintiff alleged that a worker's compensation administrative hearing officer acted *ultra vires*. No. 01-14-00479-CV, 2016 WL 3476914, at *2–*3 (Tex. App.—Houston [1st Dist.] June 23, 2016, no pet.)(mem. op.). But because a hearing officer's functions are discretionary, and the hearing officer acted within the bounds of that discretion in that she issued an administrative decision with which the plaintiff merely disagreed; she enjoyed immunity. *Id.* at *3

The very nature of the budgetary process requires HHSC and personnel to exercise discretion in determining whether sufficient funds were appropriated to pay various expenses. Essentially, Appellee implies but fails to plead that there is a person or persons at HHSC that made an incorrect determination that breached the lease. But once that determination was made, Deputy Executive Commissioner Niles completed the ministerial duty to certify funds were not available, which he did, and which resulted in Executive Director Novak terminating the lease. CR.316-318, CR.320. Appellee points to no facts to demonstrate that Deputy Executive Commissioner Niles thought or understood his statement in the certification to be false. Appellee may not agree with the decision the agency made, but the agency has the responsibility to determine whether the funds requested will cover existing costs given the best value to the state. Tex. Gov't Code 2167.0021.

Appellee's claim is an attempt to control state action. Agencies are delegated authority to determine their budgets. Here, Appellee attempts to handcuff HHSC—and all similarly situated state agencies—from effectively determining whether the Legislature has appropriated funds sufficient to support their requested appropriations. By asking this Court to instruct HHSC how to prepare its budget or interpret the appropriations bill to support the budget of the agency, Appellee is not asserting a valid *ultra vires* claim. It is instead seeking to control state action by restraining the state and its officials in the exercise of discretionary statutory or constitutional authority—which

is barred by sovereign immunity. *See Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 198 (Tex. 2004).

### 4. Appellee improperly seeks retrospective relief, which is outside the scope of the *ultra vires* exception.

A threshold question one must ask is whether the plaintiff's relationship to the governmental entity is ongoing, or whether it has terminated. As the Fourteenth Court of Appeals articulated in its *City of Galveston v. CDM Smith, Inc.* decision, if the suit arises out of a contract or other arrangement that has ended before the suit is filed, any relief would be, by definition, retrospective and an *ultra vires* suit cannot be maintained.

In *CDM Smith*, a contractor assisting with reconstruction after Hurricane Ike sued the City after it stopped submitting the contractor's invoices for payment by the U.S. Department of Housing and Urban Development. 470 S.W.3d 558, 562–63 (Tex. App.—Houston [14th Dist] 2015, pet. denied). The contractor sued city officials, alleging that they acted *ultra vires* in failing to invoice HUD on its behalf. The Fourteenth Court, however, rejected the contractor's purported ultra vires claim because it sought retrospective relief. *See id.* at 569–570. "As Heinrich made clear, immunity for an ultra vires act is only a waiver with regard to bringing future acts into compliance with the law." *Id.* at 569. In *CDM Smith*, however, the allegedly *ultra vires* acts—refusing to approve and submit the invoices to HUD—had already occurred and were not recurring because the contract had already expired. *Id.* at 570. Hence, there was no possible prospective relief that could be attained

in an *ultra vires* suit. Since *Heinrich*, the scope of the *ultra vires* exception to immunity has been both expanded and narrowed—in the context of real property disputes and (allegedly) unconstitutional regulations, respectively. In all cases, however, "[t]o fall within this ultra vires exception, a suit must not complain of a government officer's exercise of discretion." *Heinrich*, 284 S.W.3d at 372.

Accordingly, Appellee is asserting *ultra vires* claims against Executive Director Novak and Deputy Executive Commissioner Niles for their prior actions, which is by its very nature retrospective relief which does not meet the requirements to be a valid *ultra vires* suit. Therefore, sovereign immunity bars the suit against Novak and Niles from going forward.

Retrospective monetary relief is also generally barred for *ultra vires* claims. Relying on the *Hartzell* case, Appellee argues that it only seeks prospective injunctive remedies. CR.1065 (citing *Hartzell* v. S.O., 672 S.W.3d 304, 311 (Tex. 2023)). But the injury that Appellee complains of is the termination of the Lease. And a quick glance at Appellee's Prayer in its Second Amended Petition only shows a request for a judgment against the State and its entities for "monetary damages" and other monetary relief for the alleged breach. CR.650–51. Any further "injunctive" relief as a result of Appellee's alleged *ultra vires* claims would necessarily require the Court to "undue" past decisions, such as the termination of the Lease and certification of funds. CR.648–50. Therefore, it is clear that Appellee's request for "injunctive relief" is merely a disguised claim for compensation for past harm.

If this Court were to order Appellants to take the actions requested (and ultimately reinstate the Lease), this Court would in effect be ordering Appellants to pay Appellee compensation for past conduct. Such retrospective monetary relief is barred.

## CONCLUSION

For these reasons, Appellants respectfully request that this Court reverse the partial denial of their Plea to the Jurisdiction and remand to the trial court with instruction to dismiss with prejudice Appellee's claim.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

*/s/ Alyssa Bixby-Lawson*
ALYSSA BIXBY-LAWSON
Attorney-in-Charge
Texas Bar No. 24122680
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station

Austin, Texas 78711-2548
(210) 270-1118 | FAX: (512) 320-0667
Alyssa.Bixby-Lawson@oag.texas.gov

*Counsel for Appellants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 17th day of March, 2025, the foregoing *Brief of Appellants* was filed with the Clerk of this Court and served on the following via EFileTexas.gov efiling service.

R. Kemp Kasling
Law Offices of R. Kemp Kasling, P.C.
5511 Parkcreast Dr., Suite 110
Austin, Texsa 78731
(512) 472-6800
kkasling@khdalaw.com

**Counsel for Appellee**

/s/ Alyssa Bixby-Lawson
Alyssa Bixby-Lawson
Assistant Attorney General

## CERTIFICATE OF COMPLIANCE

In compliance with Texas Rule of Appellate Procedure 9.4(i)(2), this Appellant's Brief contains 10,427 words, excluding the portions of the brief exempted by Rule 9.4(i)(1), as calculated by Microsoft Office 360.

/s/ Alyssa Bixby-Lawson
ALYSSA BIXBY-LAWSON
Assistant Attorney General

# APPENDIX

Appendix A     Order Granting in Part and Denying in Part Defendants' Amended Plea to the Jurisdiction to Second Amended Petition

Appendix B     State Lease between 8317 Cross Park and State of Texas

Appendix C     Civil Practice and Remedies Code, Title 5, Chapter 114

**Chair**
William Allensworth

**Commissioners**
Steve Alvis
Brian Bailey
Patti C. Jones
Rigoberto "Rigo" Villarreal
C. Price Wagner

**Executive Director**
Mike Novak

*Mailing address*:
P. O. Box 13047
Austin, TX 78711-3047
(512) 463-3446
www.tfc.state.tx.us



January 7, 2020

Truist Bank
Attn: Jay Hall, Vice President
1010 Kennedy Drive, Suite 100
Key West, Florida 33040

Lease:  10292 Austin
Term:   09/01/2002 through 008/31/2028

Dear Mr. Hall:

Please find enclosed a Tenant Estoppel Certificate, as requested, for the above referenced lease. If a change of ownership of the property is anticipated, the *Notice of Change of Lessor for State Lease Contracts, Vendor Direct Deposit/Advance Payment Notification Authorization, W-9* and *Texas Application for Payee Identification Number* forms have been included for completion and return.

If you have any questions, please contact me at (512) 463-5649.

Respectfully,

Jenny Ruiz
Program Specialist, State Leasing Services
Planning and Real Estate Management Division

Enclosures



**Texas Facilities Commission**
*Physical address*: 1711 San Jacinto Blvd, Austin, Texas 78701
➤ ★ *Planning and administering facilities in service to the State of Texas* ★ ◀

11

**EXHIBIT A**

APPENDIX B

## NOTICE OF CHANGE OF LESSOR
## FOR STATE LEASE CONTRACTS

### INSTRUCTIONS AND INFORMATION

a. The following documents are required to process a Change of Lessor request and should be sent directly to the Texas Facilities Commission (TFC) Leasing Program: 1.) Notice of Change of Lessor for State Lease Contracts form 2.) A copy of the recorded deed showing the transfer of ownership and providing the property description 3.) A recent property tax statement matching the property address with the legal description.

   <u>Important</u>: The Change of Lessor for State Lease Contracts form must be signed by both the old and the new owners. Signatures must also represent only those persons designated for having signatory power. A copy of a corporate resolution or document identifying those persons with signatory authority is required.

b. Payment to the New Lessor may not be approved by TFC until this notice has been accepted and signed by the Director, State Leasing Services for TFC.

c. Upon TFC's receipt and verification that all necessary documentation from the Lessor satisfactorily proves the change of ownership, TFC shall effect a notice of change of ownership to all parties by the issuance of a Change of Lessor amendment to the lease contract. The amendment will be sent by TFC to the New Lessor, named herein, and to the Occupying Agency/ies.

d. Payment to the New Lessor by the Occupying Agency/ies shall begin, based upon the effective payment date stated in the amendment.

e. A person asserting a right as a Lessor to the State by virtue of a transfer of interest from the stated Lessor, may not file this form, or be entitled to receive any payment from the State under the lease referred to herein, where that person has, or claims to have, a different, a lesser, or no responsibility to fulfil the Lessor's duties under the subject lease.

f. For purposes of this Notice, the New Lessor need not obtain the signature of the Old Lessor, where

   (1) the right to act as Lessor is transferred pursuant to a COURT ORDER; (In such a case the court order should be attached to this form.)

   OR

   (2) the right to act as Lessor is transferred pursuant to a proper exercise of a right to FORECLOSURE of a Vendor's Lien retained in a Deed of Trust, or pursuant to a proper exercise of any similar right of foreclosure duly authorized and documented. (In such case the right to receive payments under the lease is affected by the terms of the legal document giving rise to foreclosure, and those legal documents should be submitted to TFC attached to this form).

g. The sole purpose of this form is to insure that all payments made by the State are to the proper persons and under the proper circumstances. Nothing in this form shall be understood to be for any other purpose.

h. In order to receive rent payments from a state agency, the New Lessor must establish a vendor Payee Identification Number (PIN) with the Texas Comptroller of Public Accounts. The PIN must be entered in the space provided under item 3(b) on the reverse side of this form <u>prior</u> to approval of this form by TFC. The Name of New Lessor entered in Item 1 on the reverse side of this form must match the Payee Name on the Texas Application for Payee Identification Number form. A downloadable application form can be found on the web site of the Texas Comptroller of Public Accounts @ www.cpa.state.tx.us. In the SEARCH field enter TINS MAIN MENU, open that link, under Quick Links open FORMS, scroll down to <u>Texas Application for Payee Identification Number (Form AP-152)</u>.



Revised: 05/2019

<span style="color:red; font-size:2em">EXHIBIT A</span> 12

APPENDIX B

# NOTICE OF CHANGE OF LESSOR
## FOR STATE LEASE CONTRACTS

**(Please read and refer to Texas Facilities Commission (TFC) Rule and the standard State lease contract, and to the instructions and information on reverse side.)**

    RE:    State Lease No. _____ City: _____, Texas

1. Name of New Lessor: _____
                                             **(Owner of Record)**
All vouchers submitted subsequent to receipt and acceptance by TFC of this completed Notice will be approved for payment by the TFC only to the Lessor named above in this item. Acceptance by the TFC will be indicated below by signature of the Director, State Leasing Services for the Texas Facilities Commission.

2. Date of Transfer of Interest: _____
                                      **(If transfer has been effected by duly recorded instrument, provide recording data below)**

    Date filed: _____      County of Record: _____

    Volume: _____      Page: _____

    TFC reserves the right to examine all instruments affecting transfer prior to approving vouchers for payment to the New Lessor.

3. Signatures Required: (For exception, see Item f. of the Instructions on the reverse side of this Notice)

    (a) <u>OLD LESSOR:</u> _____ (As shown on existing contract)

        Signature: _____ / _____ (Typed or printed name)

        Title: _____ Date: _____

    No voucher signed by the Old Lessor for a lease period subsequent to the date this Notice will approved by TFC for payment.

    (b) <u>NEW LESSOR:</u> _____ (As shown in 1. above)

        Address: _____ City: _____

        State _____ Zip: _____ Tel. (    ) _____

        Fax (    ) _____ Email: _____

        Signature: _____ / _____ (Typed or printed name)

        Title: _____ Date: _____

        Payee Identification Number (PIN): _____

    (c) <u>PROPERTY MANAGEMENT COMPANY:</u> _____

        Contact Person/Title: _____

        Address: _____ City: _____ St. _____ Zip: _____

        Tel. (    ) _____ Fax (    ) _____ Email: _____

4. No vouchers received subsequent to generation of this Notice will be approved by TFC for payment to the New Lessor unless this Notice is completed and signed by all parties as indicated above, and signed by the Director of State Leasing Services for TFC.

    Approved on behalf of the Texas Facilities Commission

    By: _____ Date: _____
          **Director, State Leasing Services**
          **Planning and Real Estate Management Division**

<span style="color:red; font-size:2em">EXHIBIT A</span>

13

 Comptroller of Public Accounts FORM **AP-152** (Rev.8-17/17) **FMX**

# Application for Texas Identification Number

• See instructions on back

| For Comptroller's use only |
|---|

**1.** Is this a new account? ☐ YES  Mail Code 000  ☐ NO  Enter Mail Code └─┴─┴─┘  Agency number └─┴─┴─┘
Complete Sections 1 - 5  Complete Sections 1, 2 & 5

**Section 1**

**2.** **Texas Identification Number (TIN)** - Indicate the type of number you are providing to be used for your TIN
☐ Employer Identification Number (EIN) *(9 digits)*
☐ Social Security number (SSN) *(9 digits)*
☐ Individual Taxpayer Identification Number (ITIN) *(9 digits)*
☐ Comptroller's assigned number (FOR STATE AGENCY USE ONLY) *(11 digits)*
☐ Current Texas Identification Number (FOR STATE AGENCY USE ONLY) *(11 digits)*

Enter the number indicated └─┴─┴─┴─┴─┴─┴─┴─┴─┴─┴─┘

**3.** Are you currently reporting any Texas tax to the Comptroller's office such as sales tax or franchise tax?  ☐ YES  ☐ NO
If "YES," enter Texas Taxpayer Number └─┴─┴─┴─┴─┴─┴─┴─┴─┴─┴─┘

**Section 2**

**Payee Information** *(Please type or print)*

**4.** Name of payee (Individual or business to be paid)

**5.** Mailing address where you want to receive payments

**6.** *(Optional)*

**7.** *(Optional)*

**8.** *(Optional)*

**9.** City          State    ZIP code

**10.** Payee telephone number (Area code and number) └─┴─┴─┘ └─┴─┴─┘ — └─┴─┴─┴─┘  SIC code └─┴─┴─┴─┘  Security type code └─┘ ( 0, 1, 2 )  Zone code └─┴─┴─┘

**Section 3**

**11.** **Ownership Codes** - Check only one code by the appropriate ownership type that applies to you or your business.

☐ **I** - Individual Recipient (not owning a business)

☐ **S** - Sole Ownership (Individual owning a business): If checked, enter the owner's name and Social Security number (SSN)

Owner's name _____

SSN / ITIN *(9 digits)* └─┴─┴─┴─┴─┴─┴─┴─┴─┘

☐ **P** - Partnership: If checked, enter two partner's names and Social Security numbers (SSN). If a partner is a corporation, use the corporation's Employer Identification Number (EIN).

Name _____

SSN / ITIN / EIN *(9 digits)* └─┴─┴─┴─┴─┴─┴─┴─┴─┘

Name _____

SSN / ITIN / EIN *(9 digits)* └─┴─┴─┴─┴─┴─┴─┴─┴─┘

☐ **N** - Other: If checked, explain. _____

☐ **L** - Texas Limited Partnership: If checked, enter the Texas File Number └─┴─┴─┴─┴─┴─┴─┴─┴─┴─┘

☐ **T** - Texas Corporation: If checked, enter the Texas File Number └─┴─┴─┴─┴─┴─┴─┴─┴─┴─┘

☐ **A** - Professional Association: If checked, enter the Texas File Number └─┴─┴─┴─┴─┴─┴─┴─┴─┴─┘

☐ **C** - Professional Corporation: If checked, enter the Texas File Number └─┴─┴─┴─┴─┴─┴─┴─┴─┴─┘

☐ **O** - Out-of-State Corporation

☐ **G** - Governmental Entity

☐ **U** - State agency / University

☐ **F** - Financial Institution

☐ **R** - Foreign (out of U.S.A.)

**Section 4**

**12.** Payment Assignment?  ☐ YES  ☐ NO  *Note: A copy of the assignment agreement between payees must be attached.*

Assignee name _____

Assignee TIN └─┴─┴─┴─┴─┴─┴─┴─┴─┘  Assignment date └─┴─┴─┴─┘

**Section 5**

**13.** Comments _____

**14.** Authorized signature *(Applicant or authorized agent)* _____  Date _____

Agency name _____  Prepared by _____  Phone *(Area code and number)* _____

[District Court of Travis County Texas seal stamp]

**EXHIBIT A**  14  APPENDIX B

| Form **W-9** | **Request for Taxpayer** | **Give Form to the** |
|---|---|---|
| (Rev. December 2014)<br>Department of the Treasury<br>Internal Revenue Service | **Identification Number and Certification** | **requester. Do not send to the IRS.** |

**1** Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

**2** Business name/disregarded entity name, if different from above

**3** Check appropriate box for federal tax classification; check only **one** of the following seven boxes:

☐ Individual/sole proprietor or single-member LLC  ☐ C Corporation  ☐ S Corporation  ☐ Partnership  ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶ _____

**Note.** For a single-member LLC that is disregarded, do not check LLC; check the appropriate box in the line above for the tax classification of the single-member owner.

☐ Other (see instructions) ▶

**4** Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) _____

Exemption from FATCA reporting code (if any) _____

*(Applies to accounts maintained outside the U.S.)*

**5** Address (number, street, and apt. or suite no.)

Requester's name and address (optional)

**6** City, state, and ZIP code

**7** List account number(s) here (optional)

*Print or type*
*See Specific Instructions on page 2.*

---

## Part I — Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the instructions for line 1 and the chart on page 4 for guidelines on whose number to enter.

**Social security number**

☐☐☐ – ☐☐ – ☐☐☐☐

**or**

**Employer identification number**

☐☐ – ☐☐☐☐☐☐☐

---

## Part II — Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3. I am a U.S. citizen or other U.S. person (defined below); and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

| **Sign Here** | Signature of U.S. person ▶ | Date ▶ |
|---|---|---|

---

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** Information about developments affecting Form W-9 (such as legislation enacted after we release it) is at *www.irs.gov/fw9*.

### Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following:

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding.* See *What is backup withholding?* on page 2.

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See *What is FATCA reporting?* on page 2 for further information.

Cat. No. 10231X

Form **W-9** (Rev. 12-2014)

 Comptroller 74-176
of Public
Accounts (Rev.8-17/19) FM**X**
FORM

|  | For Comptroller's Use Only |
|---|---|

# Direct Deposit Authorization

*This form may be used by vendors, individual recipients or state employees to receive payments from the state of Texas by direct deposit or to change/cancel existing direct deposit information.*

## Transaction Type

**SECTION 1**

☐ New setup *(Sections 2, 3, 5 and 6)*
☐ Change financial institution *(Sections 2, 3, 4, 5 and 6)*
☐ Change account number *(Sections 2, 3, 4, 5 and 6)*

☐ Change account type *(Sections 2, 3, 4, 5 and 6)*
☐ Cancellation *(Sections 2 and 6 - Sections 7 and 8 for state agency use)*

## Payee Identification

**SECTION 2**

| Payee type | ☐ Texas Identification Number (TIN) | ☐ Individual Taxpayer Identification Number (ITIN) | Mail code *(If not known, leave blank.)* |
|---|---|---|---|
| ☐ State employee | ☐ Employer Identification Number (EIN) | | |
| ☐ Vendor or other recipient | ☐ Social Security Number (SSN) * | | |

| Payee name | Phone number | ext. |
|---|---|---|

| Mailing address | City | State | ZIP code |
|---|---|---|---|

## New Account Information (Setups and Changes) *(Completion by financial institution is recommended.)*

**SECTION 3**

| Financial institution name | City | State |
|---|---|---|

| Routing transit number *(9 digits)* | Customer account number *(maximum 17 characters)* | Type of account ☐ Checking ☐ Savings |
|---|---|---|

| Financial representative name *(optional)* | Title *(optional)* |
|---|---|

| Financial representative signature *(optional)* | Phone number *(optional)* ext. | Date *(optional)* |
|---|---|---|

## Existing Account Information (Changes Only)

**SEC 4**

| Routing transit number *(9 digits)* | Customer account number *(maximum 17 characters)* | Type of account ☐ Checking ☐ Savings |
|---|---|---|

## International Payments Verification *(required)*

**SEC 5**

Will these payments be forwarded to a financial institution outside the United States?.......................................................... ☐ YES  ☐ NO
*If "YES," also complete the ACH (Direct Deposit) Payment Destination Confirmation (Form 74-227).*

## Authorization for Setup, Changes or Cancellation *(required)*

**SECTION 6**

I authorize the Texas Comptroller of Public Accounts to deposit my payments from the state of Texas to my financial institution electronically.
I understand that the Texas Comptroller of Public Accounts will reverse any payments made to my account in error.
I further understand that the Texas Comptroller of Public Accounts will comply at all times with the National Automated Clearing House Association's rules. *(For further information on these rules, please contact your financial institution.)*

| **sign here**  Authorized signature | Printed name | Date |
|---|---|---|

## Cancellation by Agency *(for state agency use)*

**SEC 7**

| Reason | Date |
|---|---|

## Authorized Signature *(for state agency use)*

**SECTION 8**

| **sign here**  Signature | Date |
|---|---|
| Phone number  ext. | Agency number |
| Agency name | |
| Comments | |

| **Please return your completed form to:** |
|---|



## TENANT ESTOPPEL CERTIFICATE

Date: January 6, 2020

To: Truist Bank
Attn: Jay Hall, Vice President
1010 Kennedy Drive, Suite 100
Key West, Florida 33040

Austin 8317 Cross Park, LLC
138 Simonton Street
Key West, Florida 33040

Re: **State Lease 10292 Austin**

Having the authority to do so, I hereby certify, as of the date hereof, the following:

1. The State of Texas is the Lessee under State Lease **10292 Austin** in which currently **DuPont Cross Park Drive Limited Partnership** is identified as Lessor.

2. Lessee presently occupies the premises demised by the Lease. Subject to Lessor's obligations to maintain the premises demised by the Lease and any other terms and conditions of the Lease, Lessee has accepted the premises demised by the Lease and acknowledges that, following Lessee's inspection of same, the Property and Premises demised by the Lease substantially complies with all of the Lease Requirements.

3. The Lease, a copy of which is attached hereto, commenced on **September 1, 2002** and currently terminates on **August 31, 2028**, unless extended or terminated earlier in accordance with the terms of the Lease.

4. The Lease is in full force and effect and has not been amended, modified or supplemented in any way except as specified herein below, and the entire agreement between the Lessor and Lessee relative to Lessee's use of the premises demised by the Lease is embodied in the Lease.

5. Lessee **is not** aware of **any** default of the terms of the Lease on the part of Lessor, and as of the date of this Tenant Estoppel Certificate, Lessee has **no** knowledge of **any** claim against Lessor which might be offset against rents payable in the future.

6. The current rent payable under the Lease is **$153,955.25** per month and no rents have been paid before the due date thereof.

7. Lessee has received no notice of a prior sale, pledge, assignment or hypothecation of the Lease or rent payable hereunder.

8. Attached are the following amendments, modifications, or supplements to the Lease: CPI Escalation Increase Lease Amendment dated July 18, 2003; CPI Lease Payment Adjustment dated July 21, 2004; CPI Lease Payment Adjustment dated July 20, 2005; Lease Amendment dated

November 17, 2005; CPI Lease Payment Adjustment dated August 23, 2006; Lease Extension Amendment dated October 18, 2006; Add Space and Lease Renewal Amendment dated May 18, 2007; CPI Lease Payment Adjustment dated November 1, 2007; Add Space Amendment dated July 18, 2008; CPI Lease Payment Adjustment dated September 4, 2008; Change of Information effective November 12, 2008; Add Space Amendment dated December 18, 2008; Lease Term Amendment dated March 10, 2009; CPI Lease Payment Adjustment dated September 9, 2010; CPI Lease Payment Adjustment dated September 15, 2011; CPI Lease Payment Adjustment dated October 2, 2012; CPI Lease Payment Adjustment dated July 13, 2013; CPI Lease Payment Adjustment Notification dated October 7, 2014; Space Allocation Notification dated December 4, 2015; Add Space Amendment dated May 17, 2016; Add Space Amendment July 8, 2016; CPI Lease Payment Notification dated August 9, 2016; Add Space Amendment dated August 26, 2016; Space Allocation Notification dated November 8, 2016; CPI Lease Payment Notification dated August 14, 2017; and Lease Renewal, Assumption of Utilities, with Tenant Improvements & State-Owned Cancellation Amendment dated February 14, 2018.

Respectfully,

THE STATE OF TEXAS, Lessee
Acting by and through the
TEXAS FACILITIES COMMISSION

Gayla Davis, Director, State Leasing
Services, Planning and Real Estate
Management Division

Attachments

jr



**EXHIBIT A**     18



## STATE LEASE
### (BID)

THE STATE OF TEXAS      )

COUNTY OF TRAVIS      )

### 1. PARTIES

This Agreement is made and entered into this <u>13th day of December, 2001</u> , by and between LESSOR, <u>Dupont Cross Park Drive Limited Partnership, of Travis County, Texas, U.S.A</u> and LESSEE, STATE OF TEXAS.

### 2. PROPERTY LEASED

Lessor promises, in return for the consideration described herein to be paid by the Lessee and the covenants set out herein to be kept by Lessee, to hereby lease, unto the Lessee, the following described property and premises, to wit:

<u>25,300</u>        square feet of net usable space, located in the

<u>(Existing)</u>        [Building], at

<u>8317 Cross Park Drive</u>        [Street address], in

<u>Austin   78754</u>        [City]

<u>Travis</u>        County, Texas

Lessor also promises to furnish any and all requirements related to such property and premises as set out in the Invitation for Bid, including specifications, the Bidder's response thereto, and the Notice of Award, each of which are incorporated herein by reference and made a part hereof for all purposes.

### 3. MONTHLY RENTAL

The Lessee agrees to pay Lessor <u>Thirty-Six Thousand Five Hundred Thirty-Seven And 00/100</u> Dollars (<u>$36,537.00</u>) per month during the term of this lease. (All additions or deletions of net usable space to this lease shall be based upon an annual rate of $ <u>17.33</u> per square foot.) Lessor agrees to submit monthly statements for rent to the occupying state agency. The monthly rentals provided for herein shall be due and payable by Lessee in advance on the first day of the month for which said rentals are due.

### 4. TERM OF THE LEASE

The term of this lease shall be for <u>60</u> months, commencing on the <u>1st day of September, 2002</u>, and ending on the <u>31st day of August, 2007</u> unless sooner terminated as hereinafter provided. *180 days R*

(a) The Lessee, at its option, may renew this lease in accordance with the terms and conditions of the Invitation for Bid and the specifications contained therein, by advising the Lessor in writing of its intent to do so no later than 30 days prior to the termination date described above in this paragraph. If the Invitation for Bid contained no reference to an option to renew for a specified term, this lease may be renewed once according to the same provisions that were in the original contract for a term not to exceed one year, on agreement of the parties.

(b) This lease contract is made and entered into in accordance with the provisions of Texas Government Code, Title 10, Subtitle D, and is made contingent upon the continuation of federally funded programs, or upon the availability of state funds appropriated by the Legislature, to cover the full term and cost of this lease. In the event a curtailment of federally funded programs occurs, or in the event state appropriated funds are unavailable, the General Services Commission, hereinafter referred to as the Commission, may assign another State agency to the space, or a part thereof, covered by this lease. Should the Commission be unable to find another State agency or agencies to fill, or partially fill the space, the Commission, upon written notice to the Lessor, either may terminate this lease, or adjust it in accordance with the provisions of this lease.

G:\OA\Lease\Personnel\Region A\Corr\10292 Bid Lease Contract.doc

## EXHIBIT A

(c) If the Lessor shall be unable to give possession of the demised premises on the date of commencement of the term hereof by reason of the fact that the premises are located in a building being constructed and which has not been sufficiently completed to make such premises ready for occupancy, or if repairs, alterations, improvements or decorations of the demised premises are not ready for occupancy by the Lessee on the date of commencement of the term hereof, the Lessee may terminate the lease and attempt to secure other lease space in accordance with Texas Government Code, Title 10, Subtitle D. The Lessee may not terminate the lease if the delayed occupancy is the responsibility of the State, or is caused by conditions beyond the Lessor's control, such as strikes, lockouts, fire, unusual delay in transportation, unavoidable casualties, inclement weather, or any cause beyond the Lessor's control, which constitutes a justifiable delay. Should termination occur under this paragraph, the Lessor will be liable in damages for any additional rent the Lessee is required to pay for facilities substantially equal to those bid by the defaulting Lessor. If the Lessee so elects, the Lessee may continue to treat this lease as if in full force and effect for a period of no more than 120 days after the stated date of commencement. During this time, or for as long as possession does not commence, the rent reserved and covenanted to be paid shall not be paid, and Lessor shall be liable for all costs necessary to house the State agency in question during this term. Payment hereunder shall not begin until the possession of the premises is given or the premises are available for full occupancy by the Lessee.

5. GENERAL TERMS AND CONDITIONS

(a) Lessor further agrees that should the Lessee request additional space during the term of this lease, Lessor may furnish such space as is requested by the Lessee, if available, adjacent to space covered by this lease, at a rental not more than the monthly cost per square foot shown in paragraph 3 above, and to be concurrent with the balance of the period covered by this lease. If it is determined by the Commission that market conditions have changed since the start of this lease, or the start of any option period currently in effect, the monthly cost per square foot applicable to the space to be added may be adjusted to reflect present market conditions, as agreed to by the Lessor and Lessee. The Lessor shall also furnish any and all services provided in this lease. The lease of additional space shall not be valid, however, unless evidenced in writing and signed by both parties.

(b) Lessor covenants and agrees to pay all taxes of whatever nature, levied and assessed and to be levied or assessed, on or against the leased property and improvements during the term of the lease, and to keep the leased premises, property and buildings in good repair and condition during the continuance of the term of this lease, said maintenance to include, but is not limited to, the following services: Repair and patch wall, ceiling and floor surfaces; painting as needed; replacement of broken window glass; repair of window shades, blinds and/or drapes, fasteners and sash cord or chains; roof and ceiling leaks; building exterior, interior; plumbing, heating, air conditioning and ventilating equipment; fire protection equipment; miscellaneous valves; woodwork, locks, floor surfaces and coverings; lighting fixtures, and the replacement of all defective or burned-out light bulbs, fluorescent tubes, ballasts and starters.

(c) It is further understood and agreed that if the Lessor does not maintain the premises and all appurtenances thereto, as heretofore specified, in reasonably good repair, reasonable wear and tear excepted, the Lessee shall notify the Lessor in writing in reference thereto by registered mail. If, within thirty (30) days after such notice has been mailed to the Lessor, said Lessor fails to take steps to remedy the grievances specified, the Lessee may take such actions in accordance with paragraph 5.(n) below.

(d) Lessor hereby covenants and agrees that hereafter and during the term of this lease, it will not rent, lease or otherwise furnish space in this or any adjacent buildings under its control to any enterprise which, in the usual exercise of its business, could be expected to create noise or odors injurious or disruptive to Lessee's normal governmental activity.

(e) Lessor further covenants that it has good and sufficient title to the said premises, and has full power and authority to execute this lease and to place Lessee in possession of the premises in full satisfaction of and compliance with the terms and conditions herein. Lessor also agrees that it will not attempt to impose upon Lessee any requirements of other legal instruments related to these premises not referred to herein or made a part hereof. Lessor warrants and defends unto Lessee against the claims of all persons to the leasehold interests of the Lessee. Any person or entity executing this lease as agent for the Lessor shall attach to this lease sufficient evidence or authority to act in the capacity shown.

G:\...\Personnel\Region A\Corr\10292 Bid Lease Contract.doc

(f) Lessor warrants that the operation of the Lessee on the demised premises is not in violation of any city ordinance or statute or any restriction imposed against the demised premises, and that said Lessor will indemnify said Lessee for any direct or indirect loss sustained by Lessee as a result of the existence of such restriction, ordinance or statute.

(g) Lessor hereby covenants and agrees that the Lessee may bring on to the leased premises any and all equipment and improvements reasonably necessary for the efficient exercise of Lessee's governmental responsibilities. Any and all improvements which may have been made by the Lessee as shall be agreed to and adopted by the parties hereto shall become the property of the Lessee.

(h) Any signs necessary to indicate Lessee's name, location and governmental purpose shall be prepared and installed in accordance with Lessor's applicable rules and regulations and in keeping with building decor. Any special requirements of Lessee contrary to the above must be stated in the advertised specifications and made a part of this lease.

(i) On termination of this lease, by lapse of time or otherwise, Lessee may, within a reasonable time thereafter, at its option and expense, remove from said premises any and all improvements, equipment, appliances or other property placed or owned by it thereon, and shall deliver up said premises and property to Lessor in as good order and condition as they now are, or may be put by the Lessor, provided however, that reasonable use, ordinary wear and tear, depreciation, damages, or destruction by fire or the elements, or unavoidable casualty and repairs, and replacements, for which the Lessor is obligated, are excepted.

(j) If, during the term of this lease, said premises, or any portion thereof, shall be condemned for any public purpose, either party hereto shall have the option of terminating and canceling this lease upon thirty (30) days notice to the other party of its election to do so.

(k) It is mutually agreed between the Lessor and the Lessee that if said building and premises shall, during the term of this lease or previous thereto, be slightly damaged by fire or any other cause or causes, the same shall be promptly repaired by the Lessor. During the time of such repair, if the space cannot be fully utilized by Lessee, lease payments due hereunder shall be either reduced or withheld in accordance with the degree of non-use. But if said building and premises be so damaged as to render said premises unfit for occupancy, then, and from the date of such damage, this lease shall cease and be void, and rent and other obligations hereunder shall be due and payable only to the date of such damage. If the Lessor has available under his control space which will meet Lessee's needs and offers same to Lessee, the Lessee may at its option, occupy that space under the same terms and conditions of this lease.

(l) Lessee reserves the right to assign any agency of State government to occupy all or any part of the space described herein, but covenants and agrees that it will not assign or sublet all or any part of the leased premises to any private parties (persons or corporations).

(m) In the event Lessee shall be in default in the payment of rentals or other charges hereunder or shall otherwise breach its covenants or obligations hereunder, and shall be and remain in default for a period of thirty (30) days after written notice from Lessor to it of such default, Lessor shall have the right and privilege of terminating this lease and declaring the same at an end, and of entering upon and taking possession of said premises, and shall have the remedies now or hereafter provided by law for recovery of rent, repossession of the premises, and damages occasioned by such default.

(n) In the event Lessor shall breach or be in default in the performance of any of the covenants or obligations imposed upon Lessor by this lease, and shall remain in default for a period of thirty (30) days after written notice from Lessee to it of such default , Lessee shall have the right and privilege of terminating this lease and declaring the same at an end, and shall have the remedies now or hereafter provided by law for recovery of damages occasioned by such default. In lieu of a formal declaration of default and resulting termination as provided above, and in special cases urged by the occupying state agency, the Lessee may withhold payment of rent from Lessor, until such time as the violations have been corrected. If violations of this lease create an emergency situation and threaten the occupying agency's ability to use the premises, the Lessee may correct all or any part of the violations and deduct the cost from rentals due the Lessor. Such extraordinary remedies will only be undertaken in the best interest of the state when a move following termination would be highly disruptive to the occupying agency and detrimental to its statutory functions.

G:\JA\D&R\Personnel\Region A\Corr\10292 Bid Lease Contract.doc



**EXHIBIT A**

21

APPENDIX B

(o)  The failure of the Lessee or Lessor to insist in any one or more instances on a strict performance of any of the covenants of this lease shall not be construed as a waiver or relinquishment of such covenants in future instances, but the same shall continue and remain in full force and effect.

(p)  This agreement and each and all of its covenants, obligations and conditions hereof, shall inure to the benefit of, and be binding upon, the heirs, personal representatives, successors and assigns of Lessor, and the successor in office of Lessee.

(q)  This lease shall  be effective as of the date the Commission executes this lease contract to Lessor.  All proposals, negotiations, notices, and representations with reference to matters covered by this lease are merged in this instrument, and no amendment or modification thereof shall be valid unless evidenced in writing and signed by both parties, as identified below.

(r)  Lessee covenants and agrees to abide by any and all reasonable rules promulgated by Lessor for the proper operation of the subject demised property and surrounds, provided only that all rules promulgated subsequent to commencement of this lease be submitted to Lessee for consideration and comment at least thirty (30) days prior to implementation.

6.  SPECIAL TERMS AND CONDITIONS [shall be listed here, and shall include but not be limited to: mutual cancellation clauses, provisions relating to performance bonds on new construction, special requirements peculiar to the occupying agency, and special requirements or conditions bid by the Lessor and accepted by the Commission prior to award].

(a)

(b)

(c)

(d)


**LESSOR:**

Dupont Cross Park Drive Limited Partnership


By:
Signature
(Please type or print name under signature)

Title          [See 5. (e) above]

502-302-1500
Area Code          Telephone Number

Date:  12/18/01


**LESSEE:**

STATE OF TEXAS
Acting by and through the
GENERAL SERVICES COMMISSION

By:
Signature    MICHAEL J. LACY

STATE LEASE OFFICER
Title

(512)                     463-3367
Area Code          Telephone Number

**EXHIBIT A**

22

APPENDIX B

**EXECUTIVE DIRECTOR**
Randall H. Riley



**CHAIRMAN**
Tom Beard

**COMMISSIONERS**
Stuart S. Coleman
Noe Fernandez
Bob Jones
Mary Ann Newman - Buckley
Richard (Rick) Salwen

**Texas Building and Procurement Commission**

July 18, 2003

Dupont Cross Park Drive Limited
Partnership
c/o The Dupont Group
Attn: Mr. Richard E. Dupont, President
6330 Hwy 290 East, Ste 310
Austin, TX 78723

Re: Lease 10292-AUSTIN
Term: 09/01/2002 through 08/31/2007
**CPI ESCALATION INCREASE**
**LEASE AMENDMENT**

Dear Mr. Dupont:

With reference to Lease Contract 10292-AUSTIN, the Texas Building and Procurement Commission approves a change in the total monthly rent for space leased, due to a CPI Escalation increase.

The total rental will be increased by **$383.64** per month, resulting in a new rental of **$36,920.64** per month or **$1.459** per square foot per month or **$17.51** annual rate, for **25,300** usable square feet, effective **September 01, 2003**.

This amendment is in accordance with provisions of the contract and advertised specifications. If you have any questions, please contact the Leasing Division at 512-463-3331.

TEXAS BUILDING AND PROCUREMENT
COMMISSION APPROVED:

Reb Wayne
Regional Lease Officer

cc: Dan Tanner, Department of Human Services



# EXHIBIT A

APPENDIX B

**INTERIM EXECUTIVE DIRECTOR**
Cynthia L. Reed



**CHAIRMAN**
Tom Beard

**COMMISSIONERS**
Stuart S. Coleman
James S. Duncan
Bob Jones
Victor E. Leal
Mary Ann Newman - Buckley
Brenda Pejovich

## Texas Building and Procurement Commission

### CPI LEASE PAYMENT ADJUSTMENT
Lease: 10292 Austin
Term: 9/1/2002 through 8//31/2007

This agreement is made and entered into on this date, July 21, 2004 by the LESSEE, STATE OF TEXAS acting by and through the Texas Building and Procurement Commission.

With reference to Lease 10292 Austin, the Texas Building and Procurement Commission approves a change in the total monthly rent for space leased due to a Consumer Price Index (CPI) escalation adjustment as in accordance with the lease contract.

The total rent amount will be increased by $590.73 per month, resulting in a new rent amount of $37,511.37 per month or $17.79 annual rate per square foot for 25,300 usable square feet, effective September 1, 2004.

All future correspondence should refer to lease contract number as 10292 Austin. If you have any questions, please contact Buddy Miller at 512-463-3325.

TEXAS BUILDING AND PROCUREMENT
COMMISSION APPROVED:

Gregg Werkenthin
State Lease Officer

hac



**EXHIBIT A**

24

APPENDIX B

**EXECUTIVE DIRECTOR**
Cynthia L. Reed



**CHAIRMAN**
Brenda Pejovich

**COMMISSIONERS**
Stuart S. Coleman
James S. Duncan
Bob Jones
Victor B. Leal
Mary Ann Newman-Buckley
Betty Reinbeck

**Texas Building and Procurement Commission**

## CPI LEASE PAYMENT ADJUSTMENT
Lease: 10292 Austin
Term: 09/01/2002 through 08/31/2007

This agreement is made and entered into on this date, July 20, 2005, by the LESSEE, STATE OF TEXAS acting by and through the Texas Building and Procurement Commission.

The Texas Building and Procurement Commission approves a change in the total monthly rent for space leased due to a Consumer Price Index (CPI) escalation adjustment in accordance with the lease contract.

Effective September 1, 2005, for the lease space occupied by the Health and Human Services Commission, the total rent amount will be increased by $487.65 per month, at $18.02 annual rate per square foot, for 25,300 usable square feet, resulting in a new rent amount of $37,999.02 per month.

All future correspondence should refer to the lease contract number shown above. If you have any questions, please contact Gayla Davis at 512-475-2438.

TEXAS BUILDING AND PROCUREMENT
COMMISSION APPROVED:

Gregg Werkenthin
State Lease Officer

1711 San Jacinto Blvd. ♦ P.O. Box 13047 ♦ Austin, Texas 78711 ♦ (512) 463-6363 ♦ www.tbpc.state.tx.us

APPENDIX B



EXECUTIVE DIRECTOR
Cynthia L. Reed

CHAIRMAN
Brenda Pejovich

COMMISSIONERS
Stuart S. Coleman
James S. Duncan
Bob Jones
Victor E. Leal
Mary Ann Newman-Buckley
Betty Reinbeck

**Texas Building and Procurement Commission**

## LEASE AMENDMENT
Lease: 10292 Austin
Term: 09/01/2002 through 08/31/2007

This Agreement is made and entered into on this date, _11/17/05_, by and between the Lessor, Dupont Cross Park Drive Limited Partnership, and LESSEE, STATE OF TEXAS acting by and through the Texas Building and Procurement Commission.

The Lessor agrees to add **12,550** square feet of usable space to **Health and Human Services Commission (HHSC)** at **$16.80** annual rate per square foot for an additional rent amount of **$17,570.00** per month. The term of the add space shall be from **November 1, 2005** through **December 31, 2006.**

The contract is amended to read a total of ~~37,600~~ 37850 usable square feet of space for a total rent of **$55,569.02** per month, effective **November 1, 2005**. The rent is to be paid in accordance with the following schedule.

| AGENCY | TERM | SQ. FT OCCUPIED | ANNUAL RATE/SF | COST PER MONTH |
|---|---|---|---|---|
| HHSC – 529 | 11/01/2005 – 12/31/2006 | 25,300 | $18.02 | $37,999.02 |
| HHSC – 529 | 11/01/2005 – 12/31/2006 | 12,550 | $16.80 | $17,570.00 |
| | | 37,850 | | $55,569.02 |
| | | | | |
| HHSC – 529 | 01/01/2007 – 08/31/2007 | 25,300 | $18.02 | $37,999.02 |

This lease amendment is by mutual agreement between Lessee and Lessor. In signing this amendment, the Lessor certifies, the leased premises of the Add Space shall comply with all applicable federal, state, and local laws, statutes, ordinances, codes, rules and regulations. If you have any questions, please contact Gayla Davis, Regional Lease Officer at 512-475-2438.

TEXAS BUILDING AND PROCUREMENT
COMMISSION APPROVED:

Approved By:

_____
Gregg Werkenthin
State Lease Officer

gdd

_____
Dupont Cross Park Drive Limited
Partnership

**EXHIBIT A** 26

EXECUTIVE DIRECTOR
Edward L. Johnson



CHAIRMAN
Brenda Pejovich

COMMISSIONERS
Stuart S. Coleman
James S. Duncan
Bob Jones
Victor E. Leal
Betty Reinbeck
Barkley J. Stuart

## Texas Building and Procurement Commission
### CPI LEASE PAYMENT ADJUSTMENT
Lease: 10292 Austin
Term: 09/01/2002 through 08/31/2007

This agreement is made and entered into on this date, August 23, 2006, by the LESSEE, STATE OF TEXAS acting by and through the Texas Building and Procurement Commission.

The Texas Building and Procurement Commission approves a change in the total monthly rent for space leased due to a Consumer Price Index (CPI) escalation adjustment in accordance with the lease contract.

Effective September 1, 2006, for the lease space occupied by the Health and Human Services Commission (HHSC), the total rent amount will be increased by $1,250.31 per month, for 37,850 usable square feet, resulting in a new rent amount of $56,819.33 per month in accordance with the schedule below.

| AGENCY | TERM | SQ. FT OCCUPIED | ANNUAL RATE/SF | COST PER MONTH |
|---|---|---|---|---|
| HHSC | 09/01/2006 – 12/31/2006 | 25,300 | $18.42 | $38,834.76 |
| HHSC | 09/01/2006 – 12/31/2006 | 12,550 | $17.20 | $17,984.57 |
| | **Total** | **37,850** | | **$56,819.33** |
| | | | | |
| HHSC | 01/01/2007 – 08/31/2007 | 25,300 | $18.42 | $38,834.76 |

TEXAS BUILDING AND PROCUREMENT
COMMISSION APPROVED:

Gregg Werkenthin
State Lease Officer

kdb

**EXHIBIT A** 27

APPENDIX B

EXECUTIVE DIRECTOR
Edward L. Johnson

CHAIRMAN
Brenda Pejovich

COMMISSIONERS
Stuart S. Coleman
James S. Duncan
Bob Jones
Victor E. Leal
Betty Reinbeck
Barkley J. Stuart



## Texas Building and Procurement Commission

### LEASE EXTENSION AMENDMENT
Lease: 10292 Austin
Term: 09/01/2002 through 08/31/2007

This Agreement is made and entered into on this date, _10/18/06_ , by and between the Lessor, Dupont Cross Park Drive Limited Partnership, and LESSEE, STATE OF TEXAS acting by and through the Texas Building and Procurement Commission.

The occupying agency, the Health and Human Services Commission (HHSC), shall continue to occupy and remain in possession of the leased premises consisting of 25,300 square feet for a period of 12 months, from September 1, 2007 through August 31, 2008. In addition, the Health and Human Services Commission (HHSC) shall continue to occupy and remain in possession of the leased premises consisting of 12,550 square feet for a period of 20 months, from January 1, 2007 through August 31, 2008. This period pertains to a total of 37,850 square feet of space at $18.01 annual rate per square foot for a total of $56,819.33 per month in accordance with the schedule below.

| AGENCY | TERM | SQ. FT OCCUPIED | ANNUAL RATE/SF | COST PER MONTH |
|--------|------|-----------------|----------------|----------------|
| HHSC | 09/01/2007 – 08/31/2008 | 25,300 | $18.42 | $38,834.76 |
| HHSC | 01/01/2007 – 08/31/2008 | 12,550 | $17.20 | $17,984.57 |
| Total | | 37,850 | | $56,819.33 |

All other terms and conditions remain the same. This amendment is by mutual agreement between Lessee and Lessor.

TEXAS BUILDING AND PROCUREMENT
COMMISSION APPROVED:

Gregg Werkenthin
State Lease Officer

Approved By:

Dupont Cross Park Drive Limited Partnership
By: Richard E. Dupont

bb



1711 San Jacinto Blvd. ♦ P.O. Box 13047 ♦ Austin, Texas 78711 ♦ (512) 463-6363 ♦ www.tbpc.state.tx.us

EXHIBIT A

28

APPENDIX B

EXECUTIVE DIRECTOR
Edward L. Johnson



CHAIRMAN
Brenda Pejovich

COMMISSIONERS
Stuart S. Coleman
James S. Duncan
Bob Jones
Victor E. Leal
Betty Reinbeck
Barkley J. Stuart

**Texas Building and Procurement Commission**

## ADD SPACE AND LEASE RENEWAL AMENDMENT

Lease: 10292 Austin, TX
Term: 09/01/2002 through 08/31/2008
Lease: 10282 Austin, TX
Term: 12/10/2001 through 08/31/2008

This Agreement is made and entered into on this date, 5/18/07 , by and between the LESSOR, DUPONT CROSS PARK DRIVE LIMITED PARTNERSHIP, and LESSEE, STATE OF TEXAS acting by and through the Texas Building and Procurement Commission.

The occupying agency, the Health and Human Services Commission (HHSC), shall continue to occupy and remain in possession of the leased premises for a period of 120 months, from September 1, 2008 through August 31, 2018.

Effective June 1, 2007, the Texas Building and Procurement Commission hereby adds 12,129 square feet of useable space for the Health and Human Services Commission (HHSC) at $ 17.25 annual rate per square foot, for an additional rent amount of $ 17,435.44 per month. Lessor agrees to provide all tenant improvements for the add space at no cost to Lessee.

Effective June 1, 2007 through August 31, 2018, Lease # 10292 is amended to read that the rent is $ 71,844.81 per month, at a $ 17.25 annual rate per square foot, for 49,979 square feet of space.

Effective May 31, 2007, Lease # 10282 is terminated and shall be of no further force and effect. Effective June 1, 2007 the 6,030 square feet of space under the terminated lease shall be added to Lease # 10292. The rent for the additional 6,030 square feet added to lease # 10292 shall be $ 8,668.13 per month at a $ 17.25 annual rate per square foot.

The rent shall be paid as in accordance with the following schedule:

| AGENCY | TERM | SQ. FT OCCUPIED | ANNUAL RATE/SF | COST PER MONTH |
|---|---|---|---|---|
| HHSC | 05/01/2007 – 05/31/2007 | 37,850 | $18.01 | $56,806.54 |
| | | | | |
| HHSC | 06/01/2007 – 08/31/2018 | 49,979 | $17.25 | $71,844.81 |
| HHSC | 06/01/2007 – 08/31/2018 | 6,030 | $17.25 | $ 8,668.13 |
| TOTAL | | 56,009 | | $80,512.94 |



1711 San Jacinto Blvd. ♦ P.O. Box 13047 ♦ Austin, Texas 78711 ♦ (512) 463-6363 ♦ www.tbpc.state.tx.us

**EXHIBIT A**

29

APPENDIX B

ADD SPACE AND LEASE RENEWAL AMENDMENT – LEASE # 10292 & 10282
Page 2

All other terms and conditions of the Lease agreement shall remain in full force and effect. This amendment is by mutual agreement between Lessee and Lessor.

TEXAS BUILDING AND PROCUREMENT
COMMISSION APPROVED:

Gregg Werkenthin
State Lease Officer

bb

Approved By:

DuPont Cross Park Drive
Limited Partnership
By: Richard DuPont



**EXECUTIVE DIRECTOR**
Edward L. Johnson



**Texas Facilities Commission**

**CHAIRMAN**
Brenda Pejovich

**COMMISSIONERS**
Stuart S. Coleman
James S. Duncan
Victor E. Leal
Betty Reinbeck
Barkley J. Stuart

## CPI LEASE PAYMENT ADJUSTMENT
Lease: 10292 Austin
Term: 09/01/2002 through 08/31/2018

This agreement is made and entered into on this date, November 1, 2007, by the LESSEE, STATE OF TEXAS acting by and through the Texas Facilities Commission.

The Texas Facilities Commission approves a change in the total monthly rent for space leased due to a Consumer Price Index (CPI) escalation adjustment in accordance with the lease contract.

Effective September 1, 2007, for the lease space occupied by the Health and Human Services Commission (HHSC), the total rent amount will be increased by $1,086.92 per month at $17.48 annual rate per square foot for 56,009 usable square feet, resulting in a new rent amount of $81,599.86 per month.

TEXAS FACILITIES
COMMISSION APPROVED:

Gregg Werkenthin
Deputy Executive Director for
Space Management & Leasing Services

ah



1711 San Jacinto Blvd. ♦ P.O. Box 13047 ♦ Austin, Texas 78711 ♦ (512) 463-3446 ♦ www.tfc.state.tx.us

## EXHIBIT A

APPENDIX B

Executive Director
Edward Johnson

Chair
Betty Reinbeck

Commissioners
Malcolm E. Beckendorff
James S. Duncan
Virginia Hermosa
Victor E. Leal
Barkley J. Stuart



Texas Facilities Commission

## ADD SPACE AMENDMENT
Lease: 10292 Austin
Term: 09/01/1992 through 08/31/2018

Effective October 1, 2008 through August 31, 2018, the Texas Facilities Commission hereby adds 11,886 square feet of usable space to Health and Human Services Commission (HHSC), at $17.78 annual rate per square foot, for an additional rent amount of $17,611.09 per month.

The contract is amended to read a total of 67,895 usable square feet of space, for a total rent of $99,210.95 per month, in accordance with the following schedule:

| Agency | Term | Sq. Ft. Occupied | Annual Rate/Sq. Ft. | Cost Per Month |
|--------|------|-----------------|---------------------|----------------|
| HHSC | 06/01/2007 – 08/31/2018 | 56,009 | $17.48 | $81,599.86 |
| HHSC - OES | 10/01/2008 – 08/31/2018 | 11,886 | $17.78 | $17,611.09 |
| **Total** | | **67,895** | | **$99,210.95** |

Lessor agrees that the anniversary date for CPI Escalation increases for the Add Space portion of this lease and the entire lease space shall be September 1. Lessor agrees that the Add Space portion of this lease will be eligible for its next CPI Escalation increase on September 1, 2009.

Item 1 on page 24 of 30 of the bid package made a part of the original state lease is hereby deleted in its entirety and shall be replaced with the following provision:

1. On each anniversary date of the lease, the total monthly cost of the resulting contract may be adjusted by changes in the Consumer Price Index reflecting percentage increases or decreases. To receive the CPI adjustment, the Lessor must submit a request in writing **by certified mail, return receipt requested,** and received by the Texas Facilities Commission (TFC) no later than thirty (30) days after the anniversary date for that year. In determining whether to grant Lessor's request for a CPI increase, in whole or in part, TFC may review and consider Lessor's performance under this lease and whether any issues with the leased premises remain unresolved, as provided in Section 5(n) of the state lease.

At Lessor's sole cost and expense, the Lessor agrees to make upgrades to the add space prior to September 1, 2008:

1. Lessor shall construct the add space in accordance with the room schedule and agency specifics made part of this lease for all purposes.



1711 San Jacinto Boulevard – Austin, Texas 78701 – (512) 463-3446 – www.tfc.state.tx.us

**EXHIBIT A**

32

APPENDIX B

Lessor agrees to provide an additional 100 parking spaces to accommodate the needs of the HHSC-OES training center Add Space to this lease amendment

All other terms and conditions remain the same. This lease amendment is by mutual agreement between Lessee and Lessor. In signing this amendment, the Lessor certifies, the leased premises of the Add Space shall comply with all applicable federal, state, and local laws, statutes, ordinances, codes, rules and regulations.

TEXAS FACILITIES                                    Approved By:
COMMISSION APPROVED:


_____              _____
          Gregg Werkenthin                          DuPont Cross Park Drive Limited
     Deputy Executive Director for                  Partnership
Space Management & Leasing Services

Date: _____7/8/08_____

jdw/bb



<span style="color:red">**EXHIBIT A**</span>

APPENDIX B

| 1. | *Exterior Signage:* Lessor shall be responsible for the exterior sign. For collocated offices, it shall read, **Tx. Health and Human Services Offices**. At the option of the Regional Administrative Services staff and the lessor, exterior signage may include each agency name. The language for exterior signs will be the same as used for TxDot highway signage to identify the HHS agencies.<br><br>*Interior Signage: (only for a multi-tenant buildings or offices over 5,000 square feet).* Lessor shall provide a central directory indicating the location of each occupying agency and shall update the signage within 10 days of request from the occupying agency. Interior signage should be more specific, i.e. Health and Human Services Commission, Department of Aging and Disability Services, or Department of Family and Protective Services and so on. Lessor shall be responsible for numbering each room or area as specified by the occupying agency. |
|---|---|
| 2. | Multi-story building shall be equipped with 2 automatic elevators, with automatic leveling. |
| 3. | Agency requires contiguous space on the same floor, unless a large office that requires multiple floors, with easy access to handicapped restrooms, located on the same floor as agency space. |
| 4. | *Electrical:* Agency staff will designate the locations of their equipment and electrical outlets. Lessor shall provide **2** 120-volt electrical ground-fault duplex wall outlets above counter by the sink. Offices shall have one receptacle on each wall in location determined by Occupying Agency. Conference rooms shall have two receptacles on each wall in locations determined by Occupying Agency. Special rooms (i.e. supply/storage and/or mail rooms) shall have one receptacle on each wall in locations determined by Occupying Agency. Training rooms shall have 18 receptacles in locations determined by Occupying Agency. Lessor shall provide **five (5)** dedicated, quadraplex (DIGW) 120 Volt electrical outlets with isolated building grounds for the data demarcations, local area network equipment, and telephone equipment. Two (2) of the outlets must be installed at the data demarcation location, two (2) must be installed at the LAN location, and the final plug is to be installed at the telephone demarcation location. Also required are two #6 solid ground wires attached to a building ground; one is to be installed at the data demarcation point and the other at the telephone demarcation point. These must be located close to the agency's voice and data equipment. **The LAN room will also require one L5-20 L6-30R in a location determined by the Occupying Agency.** |
| 5. | *Electrical:*<br>Lessor shall provide and connect electrical service to the agency's modular furniture. Unless expressly permitted by the agency, connection to the modular furniture shall be made above the ceiling, through power poles that are part of the modular furniture system. (Note: Agency's modular furniture vendor shall be responsible for ceiling-tile cuts and for installation of said power poles.) Electrical service shall include standard 120-volt service for small office equipment and task lighting, as well as dedicated 120-volt service for computer equipment. Generally, each modular cubicle shall have two (2) standard 120-volt duplex outlets and one (1) computer-dedicated 120-volt duplex outlet. (The outlets are part of the modular furniture system.) For planning purposes, Lessor shall assume that a power pole shall service no more than four (4) modular cubicles. Locations and distribution of modular cubicles may require that a power pole service less than four (4) cubicles. In any event, Lessor will be responsible for providing and connecting electrical service to all modular cubicles. Lessor shall distribute electrical service so there will be no more than six (6) standard duplex outlets per circuit and no more than six (6) computer-dedicated outlets per dedicated circuit. (Information about the number of cubicles and locations relative to functional work areas is provided in the room schedule. Note that power poles will also provide routing for agency-provided and installed telephone and data wiring.) |
| 6. | *Electrical:*<br>Lessor shall provide ceiling supports and electrical wiring for **2** fan(s) and **1** data projector(s) in each Training room. Ceiling fans and projectors will be provided by the agency. |
| 7. | *Conference and/or Training Room(s):*<br>Each entrance to shall have a light switch to activate the main fluorescent lighting. Lessor shall provide sufficient recessed incandescent lighting controlled by a dimmer switch to provide evenly distributed lighting levels up to 50 foot-candles when fluorescent light are off. All special feature switches shall be located together at the front of the room. There shall be one recessed incandescent light fixture at the front center connected to a switch for control of this fixture, independent from the rest of the fluorescent lighting. Room(s) should have a separate HVAC thermostat control(s). |



**<span style="color:red">EXHIBIT A</span>** 34                    APPENDIX B

| 8. | **Conference and/or Training Room(s):** Each Training room shall have three walls with mounted cork railing at least 6" in height. The location of the cork railing will be in a location determined by the Occupying Agency. |
|---|---|
| 9. | **Training Room(s):** Training Room(s) will need space for **17** computer(s). |
| 10. | **Telephone/Data Closet:** Lessor shall provide two conduits: a 3"diameter conduit for telephone service and a 1"diameter conduit for the data circuit both from the access point on building exterior to the facility telephone company room and on to the agencies telephone/data closet ending at the D-marc termination noted for the agency/ies plywood designated for the extended D-marcs. Sufficiently sized conduit (each) for voice and data drops will be installed from the telephone/data closet to the agency/ies telephone/data extended D-marcs. A 4 ft. X 8 ft. 3/4" sheet of interior grade plywood shall be mounted in the Telephone/Data Closet at a location to be determined by the Occupying Agency/ies. No plumbing (condensate, drip pans, or water lines) should be installed over the Telephone/Data equipment. Telephone/Data Closet should not have windows. Lessor shall provide and maintain an air conditioner that is independent of the building HVAC system. This will provide A/C for 24 hours per day, 7 days a week. Boxes with conduit stubbed up 6" into the ceiling shall be provided for data/phone cabling. Agency shall determine placement of these boxes. |
| 11. | **Break Room:** *Counters:* Break Room countertops should have cabinet space above and below for storage. A standard double sink with a lever handle faucet, hot and cold water and garbage disposal must be installed in the counter.<br><br>*Cabinets:* Bottom cabinets shall be 34" high, 24" wide, have drawers at the top with cabinet space underneath with two shelves (including bottom of cabinet). Knee space shall be provided below the sink for handicapped accessibility as prescribed in TAS and ADAAG. There shall be enclosed wall cabinets above the lower cabinets with three shelves (including bottom of cabinet and two adjustable shelves). Upper cabinet shall be located 20" above lower cabinet. |
| 12. | **Locks:** All doors shall have separately keyed locks, except multi-stalled restrooms and break rooms. 2 keys shall be furnished for each separately keyed lock. A simplex lock shall be installed on the Tele/Data Closet door(s). |
| 13. | **Locks:** **All** exterior doors shall be accessed by **keys and master key(s)** provided by Lessor. |
| 14. | Normal working hours for the occupying agency are 7am to 7pm, Monday thru Friday and 7am to 12 noon on Saturday and Sunday. |



 

## Office of Eligibility Services - Austin - Office Space Program

| | Full Time Employees | 9 | Date | | 06/25/08 | |
|---|---|---|---|---|---|---|
| Item | Space Use/Room Name | Number | SF Per | | SF Ext. | Adjacency/Comments |
| | **Workspace** | | | | | |
| 1 | Training Specialists | 9 | 80 | | 720 | *Enclosed work area; sys. furn.; adj. to #2, #3* |
| | **Support Areas** | | | | | |
| 2 | Automated Training Room | 7 | 1,046 | | 7,322 | *See Agency Specifics* |
| 3 | General Training Room | 1 | 750 | | 750 | *See Agency Specifics* |
| 4 | Supply Room | 1 | 110 | | 110 | *Adjacent to #2, #3* |
| 5 | Copy/Print | 1 | 60 | | 60 | *Adjacent to #1* |
| 6 | WorkCenter | 1 | 80 | | 80 | *Adjacent to #1, #5* |
| 7 | LAN/Tele Room | 1 | 120 | | 120 | *Central to Staff and Training Rooms* |
| 8 | Break Room | 1 | 300 | | 300 | *Central to Staff and Training Rooms* |
| | | | *Sub-total* | | 9,462 | |
| | *Open Plan Circulation* | | 35% | | 273 | |
| | *Built-Out Circulation* | | 25% | | 2,151 | |
| | | | *Total Circulation* | | 2,424 | |
| | | | *Total SF* | | **11,886** | |



Executive Director
Edward Johnson

**Chair**
Betty Reinbeck

**Commissioners**
Malcolm E. Beckendorff
James S. Duncan
Virginia Hermosa
Victor E. Leal
Barkley J. Stuart



**Texas Facilities Commission**

## CPI LEASE PAYMENT ADJUSTMENT
Lease: 10292 Austin
Term: 09/01/1992 through 08/31/2018

This agreement is made and entered into on this date, September 4, 2008, by the LESSEE, STATE OF TEXAS acting by and through the Texas Facilities Commission.

The Texas Facilities Commission approves a change in the total monthly rent for space leased due to a Consumer Price Index (CPI) escalation adjustment in accordance with the lease contract.

Effective September 1, 2008, for the lease space occupied by the Health and Human Services Commission (HHSC), the total rent amount will be increased by $2,284.80 per month at $17.97 annual rate per square foot for 56,009 usable square feet, resulting in a new rent amount of $83,884.66 per month in accordance with the following schedule:

| AGENCY | TERM | SQ. FT OCCUPIED | ANNUAL RATE/SF | COST PER MONTH |
|---|---|---|---|---|
| HHSC | 09/01/2008 – 08/31/2018 | 56,009 | $17.97 | $83,884.66 |
| HHSC - OES | 10/01/2008 – 08/31/2018 | 11,886 | $17.78 | $17,611.09 |
| **Total** | | **67,895** | | **$101,495.75** |

Item 1 on page 24 of 30 of the bid package made a part of the original state lease is hereby deleted in its entirety and shall be replaced with the following provision:

1.    On each anniversary date of the lease, the total monthly cost of the resulting contract may be adjusted by changes in the Consumer Price Index reflecting percentage increases or decreases. To receive the CPI adjustment, the Lessor must submit a request in writing **by certified mail, return receipt requested,** and received by the Texas Facilities Commission (TFC) no later than thirty (30) days after the anniversary date for that year. In determining whether to grant Lessor's request for a CPI increase, in whole or in part, TFC may review and consider Lessor's performance under this lease and whether any issues with the leased premises remain unresolved, as provided in Section 5(n) of the state lease.

TEXAS FACILITIES
COMMISSION APPROVED:

Gregg Werkenthin
Deputy Executive Director for
Space Management & Leasing Services
jdw

**EXHIBIT A**

37

APPENDIX B

**Executive Director**
Edward L. Johnson



**Texas Facilities Commission**

**Chair**
Betty Reinbeck

**Commissioners**
Malcolm E. Beckendorff
William D. Darby
Virginia Hermosa
Victor E. Leal
Barkley J. Stuart

## CHANGE OF INFORMATION
Lease: 10292 Austin
Term: 09/01/2002 through 08/31/2018

Effective November 12, 2008, the Texas Facilities Commission has been notified of a change of Lessor address for the above referenced lease.

At the request of the Lessor, the current correspondence shall be sent to:

> DuPont Cross Park Drive Limited Partnership
> Attn: Richard E. DuPont
> 3508 Far West Boulevard, Suite 100
> Austin, TX 78731
>
> Tel.: (512) 302-1500 ext. 115
> Fax: (512) 302-1515
> Email: rick@thedupontgroup.com

Rental payments will be made via electronic transfer or mailed, and arranged between Lessor and occupying agency. All other terms and conditions of the lease contract remain unchanged. All future correspondence should refer to the lease contract number shown above.

TEXAS FACILITIES
COMMISSION APPROVED:

Gregg Werkenthin
Deputy Executive Director of
Space Management & Leasing Services

cc: Tim Horn, Health and Human Services Commission (HHSC)
    Ginna Harris, Texas Department of Licensing and Regulation (TDLR)

jdw



**EXHIBIT A** 38

APPENDIX B

**Executive Director**
Edward L. Johnson

**Chair**
Betty Reinbeck

**Commissioners**
Malcolm E. Beckendorff
William D. Darby
Virginia Hermosa
Victor E. Leal
Barkley J. Stuart



**Texas Facilities Commission**

## ADD SPACE AMENDMENT
Lease: 10292 Austin
Term: 09/01/2002 through 08/31/2018

Effective February 1, 2009, through August 31, 2018, the Texas Facilities Commission hereby adds 9,730 square feet of usable space to Health and Human Services Commission (HHSC) – Office of the Inspector General (OIG), at $17.78 annual rate per square foot, for an additional rent amount of $14,416.62 per month.

The contract is amended to read a total of 77,625 usable square feet of space, for a total rent of $115,912.37 per month, in accordance with the following schedule:

| Agency | Term | Sq. Ft. Occupied | Annual Rate/Sq. Ft. | Cost Per Month |
|---|---|---|---|---|
| HHSC | 09/01/2008 – 08/31/2018 | 56,009 | $17.97 | $ 83,884.66 |
| HHSC - OES | 10/01/2008 – 08/31/2018 | 11,886 | $17.78 | $ 17,611.09 |
| HHSC - OIG | 02/01/2009 – 08/31/2018 | 9,730 | $17.78 | $ 14,416.62 |
| **Total** | | **77,625** | | **$115,912.37** |

Lessor agrees that the anniversary date for the CPI Escalation increases for the Add Space portion of this lease and the entire lease space shall be September 1. Lessor agrees that the Add Space portion of this lease will be eligible for its next CPI Escalation increase on September 1, 2009.

At Lessor's sole cost and expense, the Lessor agrees to make upgrades to the add space prior to February 1, 2009:

1. Lessor shall construct the add space in accordance with the room schedule and agency specifics made part of this lease for all purposes.

Lessor agrees to provide an additional 41 parking spaces, ADA/TAS approved as required by code, to accommodate the needs of the HHSC-OIG Add Space to this lease amendment.





**EXHIBIT A** 39

APPENDIX B

All other terms and conditions remain the same. This lease amendment is by mutual agreement between Lessee and Lessor. In signing this amendment, the Lessor certifies, the leased premises of the Add Space shall comply with all applicable federal, state, and local laws, statutes, ordinances, codes, rules and regulations.

TEXAS FACILITIES
COMMISSION APPROVED:

Approved By:

_____
Gregg Werkenthin
Deputy Executive Director for
Space Management & Leasing Services

_____
DuPont Cross Park Drive Limited Partnership

cc:     Ginna Harris, Texas Department of Licensing and Regulation (TDLR)
        Tim Horn, Health and Human Services Commission (HHSC)

jdw



**EXHIBIT A** 40

APPENDIX B

# Agency Specifics

Agency Names(s): **HHSC/OIG**    Current Lease # and/or Location: **8317 Cross Park or Braker I**

| | |
|---|---|
| 1. | Lessor shall provide the occupying agency with a construction schedule (pert or gant chart) within 30 days of award of the lease. This shall apply to the initial construction and to any future add-ons to the lease. |
| 2. | The occupying agency needs accurate dimensioned floor plans for layout of office furniture and equipment. Within sixty (60) days after award of the lease, Lessor shall provide to occupying agency such plans in a CAD-compatible format. The plans will show all interior building elements, including finished dimensions and locations of columns. This shall apply to the initial construction and to any future add-ons to the lease. |
| 3. | *Exterior Signage:* Lessor shall be responsible for the exterior sign. For collocated offices, it shall read, **TX Health and Human Services Offices.** At the option of the Regional Administrative Services staff and the lessor, exterior signage may include each agency name. The language for exterior signs will be the same as used for TxDot highway signage to identify the HHS agencies.<br><br>*Interior Signage: (only for a multi-tenant buildings or offices over 5,000 square feet).* Lessor shall provide a central directory indicating the location of each occupying agency and shall update the signage within 10 days of request from the occupying agency. Interior signage should be more specific, i.e. Health and Human Services Commission, Department of Aging and Disability Services, or Department of Family and Protective Services and so on. Lessor shall be responsible for numbering each room or area as specified by the occupying agency. |
| 4. | Multi-story building shall be equipped with 2 automatic elevators, with automatic leveling. |
| 5. | Agency requires contiguous space on the same floor, unless a large office that requires multiple floors, with easy access to handicapped restrooms, located on the same floor as agency space. |
| 6. | Lessor shall provide access for freight loading and receiving with convenient access to elevators for the occupying agency's equipment. A minimum 4.0 door must be provided for this purpose. |
| 7. | An enclosed vestibule shall be provided at the main entrance and all major egress and ingress locations that open from outside weather conditions into the building. |
| 8. | All door swings shall have door stops. |
| 9. | General Investigations (GI) and Internal Affairs (IA) sections shall be separately partitioned. An emergency door must separate the two sections with an alarm and push bar located on the GI side. |
| 10. | **Electrical:**<br>Lessor shall provide and connect electrical service to the agency's modular furniture. Unless expressly permitted by the agency, connection to the modular furniture shall be made above the ceiling, through power poles that are part of the modular furniture system. (Note: Agency's modular furniture vendor shall be responsible for installation of said power poles. Lessor shall be responsible for ceiling tile cuts for agency-provided power poles.) Electrical service shall include standard 120-volt service for small office equipment and task lighting, as well as dedicated 120-volt service for computer equipment. Generally, each modular cubicle shall have two (2) standard 120-volt duplex outlets and one (1) computer-dedicated 120-volt duplex outlet. (The outlets are part of the modular furniture system.) For planning purposes, Lessor shall assume that a power pole shall service no more than four (4) modular cubicles. Locations and distribution of modular cubicles may require that a power pole service less than four (4) cubicles. In any event, Lessor will be responsible for providing and connecting electrical service to all modular cubicles. Lessor shall distribute electrical service so there will be no more than six (6) standard duplex outlets per circuit and no more than six (6) computer-dedicated outlets per dedicated circuit. (Information about the number of cubicles and locations relative to functional work areas is provided in the room schedule. Note that power poles will also provide routing for agency-provided and installed telephone and data wiring.) |
| 11. | **Conference Room** shall be located between the General Investigations (GI) and Internal Affairs (IA) sections, and shall have two doors, one leading to the GI section and the other to the IA section. The door leading to the IA section must be an emergency door with a push bar located on the GI side. |
| 12. | **Conference Room** shall have **1** TV and Audio Visual ceiling-mounted support racks. The agency will provide appropriate size TV and Audio Visual equipment to be mounted. |



**EXHIBIT A**    41                                                    APPENDIX B

| 13. | **Telephone/Data Closet:** |
|---|---|
| | • Lessor shall provide two conduits: a 3"diameter conduit for telephone service and a 1"diameter conduit for the data circuit both from the access point on building exterior to the facility telephone company room and on to the agencies telephone/data closet ending at the D-marc termination noted for the agency/ies plywood designated for the extended D-marcs. Sufficiently sized conduit (each) for voice and data drops will be installed from the telephone/data closet to the agency/ies telephone/data extended D-marcs. |
| | • Lessor shall provide **five (5)** dedicated, quadraplex (DIGW) 120 Volt electrical outlets with isolated building grounds for the data demarcations, local area network equipment, and telephone equipment. Two (2) of the outlets must be installed at the data demarcation location, two (2) must be installed at the LAN location, and the final plug is to be installed at the telephone demarcation location. Also required are two #6 solid ground wires attached to a building ground; one is to be installed at the data demarcation point and the other at the telephone demarcation point. These must be located close to the agency's voice and data equipment. Two (2) 30 amp, 125 volt, NEMA L5-30R, 2P, 3W receptacles are also required for the UPS systems. |
| | • Lessor shall provide and mount **2** sheet(s) of 4 ft. X 8 ft. 3/4" interior grade plywood in the Telephone/Data Closet at a location to be determined by the Occupying Agency. |
| | • Lessor shall provide adequate support for computer cables and telephone cable above the ceiling in the Telephone/Data Closet as determined by the Occupying Agency. |
| | • No plumbing (condensate, drip pans, or water lines) should be installed over the Telephone/Data equipment. |
| | • Telephone/Data Closet should not have windows. |
| | • Lessor shall provide and maintain an air conditioner that is independent of the building HVAC system. This will provide A/C for 24 hours per day, 7 days a week. |
| | • Boxes with conduit stubbed up 6" into the ceiling shall be provided for data/phone cabling. Agency shall determine placement of these boxes. |
| 14. | **Break Room:**<br>*Counters:* Break Room countertops should have cabinet space above and below for storage. A standard double sink with a lever handle faucet, hot and cold water and garbage disposal must be installed in the counter.<br><br>*Cabinets:* Bottom cabinets shall be 34" high, 24" wide, have drawers at the top with cabinet space underneath with two shelves (including bottom of cabinet). Knee space shall be provided below the sink for handicapped accessibility as prescribed in TAS. There shall be enclosed wall cabinets above the lower cabinets with three shelves (including bottom of cabinet and two adjustable shelves). Upper cabinet shall be located 20" above lower cabinet. |
| 15. | **Locks:**<br>No more than **15** interior doors shall have separately keyed locks. 2 keys shall be furnished for each separately keyed lock. |
| 16. | **Locks:**<br>**All** exterior doors shall be accessed by **proximity lock(s) and programmed access cards** provided by Lessor. |
| 17. | **Locks:**<br>**All** exterior doors shall be accessed by **keys and master key(s)** provided by Lessor. |
| 18. | **Rest Rooms:**<br>Staff Rest Rooms shall be located within the office space. All restrooms shall have lever handle faucets with hot and cold water. |
| 19. | Janitor Closet must have a mop sink with hot and cold water. |



EXHIBIT A                                                                    APPENDIX B

# Agency Specifics

| | |
|---|---|
| **20.** | Normal working hours for the occupying agency are 7am to 7pm, Monday thru Friday and 7am to 12 noon on Saturday and Sunday. |



**EXHIBIT A** 48

EXHIBIT A

## HHSC OIG - Austin - Braker Office Add-Space

| | Full Time Employees | 57 | | | Date 11/12/08 |
|---|---|---|---|---|---|
| Item | Space Use/Room Name | Number | SF Per | SF Ext | Adjacency/Comments |
| | **Internal Affairs** | | | | |
| 1 | Director | 1 | 180 | 180 | office; adj. to #2 - #10 |
| 2 | Manager - Maddox | 1 | 120 | 120 | office; adj. to #3 - #5 |
| 3 | Investigator VII | 2 | 80 | 160 | open plan |
| 4 | Investigator | 7 | 64 | 448 | open plan |
| 5 | Admin. Asst. | 1 | 64 | 64 | open plan |
| 6 | Manager - Abrams | 1 | 120 | 120 | office; adj. to #7 - #10 |
| 7 | Investigator VII | 2 | 80 | 160 | open plan; adj. to #8 |
| 8 | Investigator | 10 | 64 | 640 | open plan |
| 9 | Program Specialist | 1 | 64 | 64 | open plan |
| 10 | Admin. Asst. | 2 | 64 | 128 | open plan |
| 11 | Interview Room | 1 | 120 | 120 | adj. to visitor entrance |
| 12 | Conference Room | 1 | 450 | 450 | central to Internal Affairs and General Investigations |
| 13 | Enclosed File Room | 1 | 180 | 180 | central to program |
| 14 | Forensic Lab | 1 | 300 | 300 | central to program; contains 3 Invest. VI and 1 Invest. VII workstations |
| 15 | Office Machine/Supply Room | 1 | 120 | 120 | central to program |
| | **General Investigations** | | | | |
| 16 | Manager - Compton | 1 | 120 | 120 | office; adj. to #17 - #18 |
| 17 | Administrative Asst. | 4 | 64 | 256 | open plan |
| 18 | Investigator | 12 | 64 | 768 | open plan |
| 19 | Manager - Vacant | 1 | 120 | 120 | office; adj. to #20 - #21 |
| 20 | Administrative Asst. | 1 | 64 | 64 | open plan |
| 21 | Investigator | 10 | 64 | 640 | open plan |
| 22 | Office Machine/Supply Room | 1 | 180 | 180 | central to program |
| 23 | Enclosed File Room | 1 | 720 | 720 | central to program |
| 24 | Interview Room | 1 | 120 | 120 | adj. to visitor entrance |
| 25 | Break Room | 1 | 340 | 340 | w/in General Investigations; accessible to Internal Affairs |
| 26 | Tele/Data Room | 1 | 120 | 120 | central to Internal Affairs and General Investigations |
| | | | Sub-total | 6,702 | |
| | Open Plan Circulation | 60% | | 2,035 | |
| | Built-out Circulation | 30% | | 993 | |
| | | | Total Circulation | 3,028 | |
| | | | Total SF | 9,730 | |

Executive Director
Edward L. Johnson

Chair
Betty Reinbeck

Commissioners
Malcolm E. Beckendorff
William D. Darby
Virginia Hermosa
Burkley J. Stuart



**Texas Facilities Commission**

## LEASE TERM AMENDMENT
### Lease: 10292 Austin
### Term: 09/01/2002 through 08/31/2018

This agreement is made and entered into on this date, 3/10/09 , by the LESSEE, STATE OF TEXAS, acting by and through the Texas Facilities Commission, and hereby amends the contract as follows:

The commencement date of the Add Space portion of this lease originally to be effective February 1, 2009, is changed to March 1, 2009, and the termination date is August 31, 2018, with the term being decreased to 114 months.

This amendment is in accordance with 4(c) of the terms of the lease agreement.

TEXAS FACILITIES
COMMISSION APPROVED:

Approved By:

_____
Gregg Werkenthin
Deputy Executive Director for
Space Management & Leasing Services

_____
DuPont Cross Park Drive Limited Partnership

cc:     Tim Horn, Health and Human Services Commission (HHSC)
        Ginna Harris, Texas Department of Licensing and Regulation (TDLR)

jdw



1711 San Jacinto Boulevard – Austin, Texas 78701 – (512) 463-3446 – www.tfc.state.tx.us

<span style="color:red">**EXHIBIT A**</span> 45                                        APPENDIX B

**Chair**
Betty Reinbeck

**Commissioners**
Malcolm E. Beckendorff
William D. Darby
Douglas Hartman
Virginia Hermosa
Brant C. Ince
Barkley J. Stuart



**Executive Director**
Terry Keel

*Mailing address:*
P. O. Box 13047
Austin, TX 78711-3047

(512) 463-3446
www.tfc.state.tx.us

## CPI LEASE PAYMENT ADJUSTMENT
Lease: 10292 Austin
Term: 09/01/2002 through 08/31/2018

This agreement is made and entered into on this date, September 9, 2010, by the LESSEE, STATE OF TEXAS acting by and through the Texas Facilities Commission.

The Texas Facilities Commission approves a change in the total monthly rent for space leased due to a Consumer Price Index (CPI) adjustment in accordance with the lease contract.

Effective September 1, 2010, for the lease space occupied by the Health and Human Services Commission (HHSC), the total rent amount will be increased by $811.39 per month for 77,625 usable square feet, resulting in a new rent amount of $116,723.76 per month in accordance with the schedule below:

| AGENCY | TERM | SQ. FT OCCUPIED | ANNUAL RATE/SF | COST PER MONTH |
|---|---|---|---|---|
| HHSC | 09/01/2010 – 08/31/2018 | 56,009 | $18.10 | $ 84,471.85 |
| HHSC - OES | 09/01/2010 – 08/31/2018 | 11,886 | $17.90 | $ 17,734.37 |
| HHSC - OIG | 09/01/2010 – 08/31/2018 | 9,730 | $17.90 | $ 14,517.54 |
| Total | | 77,625 | | $116,723.76 |

TEXAS FACILITIES
COMMISSION APPROVED:

Michael J. Lacy
Deputy Executive Director of
Planning and Asset Management

cc:     Tim Horn, Health and Human Services Commission

jdw



**EXHIBIT A** 46

APPENDIX B

Chair
Betty Reinbeck

Commissioners
Malcolm E. Beckendorff
William D. Darby
Douglas Hartman
Virginia Hermosa
Brant C. Ince
Alvin Shaw



Executive Director
Terry Keel

*Mailing address:*
P. O. Box 13047
Austin, TX 78711-3047

(512) 463-3446
www.tfc.state.tx.us

## CPI LEASE PAYMENT ADJUSTMENT
Lease: 10292 Austin
Term: 09/01/2002 through 08/31/2018

This agreement is made and entered into on this date, September 15, 2011, by the LESSEE, STATE OF TEXAS acting by and through the Texas Facilities Commission.

The Texas Facilities Commission approves a change in the total monthly rent for space leased due to a Consumer Price Index (CPI) adjustment in accordance with the lease contract.

Effective September 1, 2011, for the lease space occupied by the Health and Human Services Commission (HHSC), the total rent amount will be increased by $2,392.84 per month for 77,625 usable square feet, resulting in a new rent amount of $119,116.60 per month in accordance with the schedule below:

| AGENCY | TERM | SQ. FT OCCUPIED | ANNUAL RATE/SF | COST PER MONTH |
|---|---|---|---|---|
| HHSC | 09/01/2011 – 08/31/2018 | 56,009 | $18.47 | $ 86,198.36 |
| HHSC - OES | 09/01/2011 – 08/31/2018 | 11,886 | $18.27 | $ 18,100.77 |
| HHSC - OIG | 09/01/2011 – 08/31/2018 | 9,730 | $18.27 | $ 14,817.47 |
| **Total** | | **77,625** | | **$119,116.60** |

TEXAS FACILITIES
COMMISSION APPROVED:

Gayla Davis
Manager, State Leasing Services

cc:     Tim Horn, Health and Human Services Commission

jdw



**EXHIBIT A** 47     APPENDIX B

**Chair**
Betty Reinbeck

**Commissioners**
William D. Darby
Douglas Hartman
Virginia Hermosa
Brant C. Ince
Mike Novak
Alvin Shaw



**Executive Director**
Terry Keel

*Mailing address:*
P. O. Box 13047
Austin, TX 78711-3047

(512) 463-3446
www.tfc.state.tx.us

## CPI LEASE PAYMENT ADJUSTMENT
Lease: 10292 Austin
Term: 09/01/2002 through 08/31/2018

This agreement is made and entered into on this date, October 2, 2012, by the LESSEE, STATE OF TEXAS acting by and through the Texas Facilities Commission.

The Texas Facilities Commission approves a change in the total monthly rent for space leased due to a Consumer Price Index (CPI) adjustment in accordance with the lease contract.

Effective September 1, 2012, for the lease space occupied by the Health and Human Services Commission (HHSC), the total rent amount will be increased by $952.93 per month for 77,625 usable square feet, resulting in a new rent amount of $120,290.01 per month in accordance with the schedule below:

| AGENCY | TERM | SQ. FT OCCUPIED | ANNUAL RATE/SF | COST PER MONTH |
|--------|------|-----------------|----------------|----------------|
| HHSC | 09/01/2012 – 08/31/2018 | 56,009 | $18.62 | $ 86,885.93 |
| HHSC - OES | 09/01/2012 – 08/31/2018 | 11,886 | $18.42 | $ 18,246.68 |
| HHSC - OIG | 09/01/2012 – 08/31/2018 | 9,730 | $18.42 | $ 14,936.92 |
| **Total** | | 77,625 | | **$120,069.53** |

TEXAS FACILITIES
COMMISSION APPROVED:

Gayla Davis, Manager State
Leasing Services, Planning and
Real Estate Management Division

cc:     Tim Horn, Health and Human Services Commission

bb/ee



**EXHIBIT A** 48

APPENDIX B



**Chair**
Betty Reinbeck

**Commissioners**
William D. Darby
Douglas Hartman
Virginia Hermosa
Brant C. Ince
Mike Novak
Alvin Shaw



**Executive Director**
Terry Keel

*Mailing address:*
P. O. Box 13047
Austin, TX 78711-3047

(512) 463-3446
www.tfc.state.tx.us

## CPI LEASE PAYMENT ADJUSTMENT
Lease: 10292 Austin
Term: 09/01/2002 through 08/31/2018

This agreement is made and entered into on this date, July 13, 2013, by the LESSEE, STATE OF TEXAS acting by and through the Texas Facilities Commission.

The Texas Facilities Commission approves a change in the total monthly rent for space leased due to a Consumer Price Index (CPI) adjustment in accordance with the lease contract.

Effective September 1, 2013, for the lease space occupied by the Health and Human Services Commission (HHSC), the total rent amount will be increased by $1,080.63 per month for 77,625 usable square feet, resulting in a new rent amount of $121,150.16 per month in accordance with the schedule below:

| AGENCY | TERM | SQ. FT OCCUPIED | ANNUAL RATE/SF | COST PER MONTH |
|--------|------|-----------------|----------------|----------------|
| HHSC | 09/01/2013 – 08/31/2018 | 56,009 | $18.78 | $ 87,665.94 |
| HHSC | 09/01/2013 – 08/31/2018 | 11,886 | $18.59 | $ 18,412.15 |
| HHSC | 09/01/2013 – 08/31/2018 | 9,730 | $18.59 | $ 15,072.37 |
| Total | | 77,625 | | $121,150.16 |

TEXAS FACILITIES
COMMISSION APPROVED:

Gayla Davis, Manager State Leasing
Services, Planning and Real Estate
Management Division

cc:     Tim Horn, Health and Human Services Commission

jc



**Texas Facilities Commission**
*Physical address:* 1711 San Jacinto Blvd, Austin, Texas 78701
*Planning and administering facilities in service to the State of Texas*

**EXHIBIT A** 49

APPENDIX B

**Chair**
Betty Reinbeck

**Commissioners**
William D. Darby
Virginia Hermosa
Brant C. Ince
Mike Novak
Jack W. Perry
Alvin Shaw



**Executive Director**
Terry Keel

*Mailing address:*
P. O. Box 13047
Austin, TX 78711-3047

(512) 463-3446
**www.tfc.state.tx.us**

## CPI LEASE PAYMENT ADJUSTMENT NOTIFICATION
Lease: 10292 Austin
Term: 09/01/2002 through 08/31/2018

This agreement is made and entered into on this date, October 7, 2014, by the LESSEE, STATE OF TEXAS acting by and through the Texas Facilities Commission.

The Texas Facilities Commission approves a change in the total monthly rent for space leased due to a Consumer Price Index (CPI) adjustment in accordance with the lease contract.

Effective September 1, 2014, for the lease space occupied by the Health and Human Services Commission, the total rent amount will be increased by $1,211.50 per month for 77,625 usable square feet, resulting in a new rent amount of $122,361.66 per month in accordance with the schedule below:

| AGENCY | TERM | SQ. FT OCCUPIED | ANNUAL RATE/SF | COST PER MONTH |
|---|---|---|---|---|
| HHSC (Office) | 09/01/2014 -- 08/31/2018 | 56,009 | $18.97 | $ 88,539.77 |
| HHSC (Training) | 09/01/2014 -- 08/31/2018 | 11,886 | $18.78 | $ 18,597.66 |
| HHSC (Office) | 09/01/2014 -- 08/31/2018 | 9,730 | $18.78 | $ 15,224.23 |
| Total | | 77,625 | | $122,361.66 |

TEXAS FACILITIES
COMMISSION APPROVED:

Gayla Davis, Manager State Leasing
Services, Planning and Real Estate
Management Division

cc:    Tim Horn, Health and Human Services Commission

lm



**Texas Facilities Commission**
*Physical address:* 1711 San Jacinto Blvd, Austin, Texas 78701
★ *Planning and administering facilities in service to the State of Texas* ★



50

APPENDIX B

**Chair**
Robert Thomas

**Commissioners**
Betty Reinbeck
William D. Darby
Mike Novak
Jack W. Perry
Patti Jones



**Executive Director**
Harvey Hilderbran

*Mailing address*:
P. O. Box 13047
Austin, TX 78711-3047
(512) 463-3446
www.tfc.state.tx.us

## SPACE ALLOCATION NOTIFICATION
Lease: 10292 Austin
Term: 09/01/2002 through 08/31/2018

This agreement is made and entered into on this date, December 4, 2015, by the LESSEE, STATE OF TEXAS, acting by and through the Texas Facilities Commission.

The monthly rent and space allocation per agency is as follows:

| AGENCY | TERM | SQ. FT. OCCUPIED | ANNUAL RATE / SQ. FT. | COST PER MONTH |
|---|---|---|---|---|
| HHSC (Office) | 12/01/2015 – 08/31/2018 | 54,022 | $18.97 | $ 85,398.69 |
| DADS (Office) | 12/01/2015 – 08/31/2018 | 1,987 | $18.97 | $ 3,141.08 |
| HHSC (Training) | 12/01/2015 – 08/31/2018 | 11,886 | $18.78 | $ 18,597.66 |
| DSHS (Office) | 12/01/2015 – 08/31/2018 | 9,730 | $18.78 | $ 15,224.23 |
| **Total** | | **77,625** | | **$122,361.66** |

All other terms and conditions shall remain the same.

TEXAS FACILITIES
COMMISSION APPROVED:

Gayla Davis, Manager, State Leasing
Services, Planning and Real Estate
Management Division

cc:   Tim Horn, Health and Human Services Commission
Ginna Harris, Texas Department of Licensing and Regulation
Regina Roberson, Texas Department of Insurance – Fire Safety Inspections, State Fire Marshal's Office

km



**EXHIBIT A**    51

APPENDIX B

**Chair**
Robert Thomas

**Commissioners**
William D. Darby
Patti Jones
Mike Novak
Jack W. Perry
Betty Reinbeck



**Executive Director**
Harvey Hilderbran

*Mailing address:*
P. O. Box 13047
Austin, TX 78711-3047
(512) 463-3446
www.tfc.state.tx.us

## ADD SPACE AMENDMENT
Lease: 10292 Austin
Term: 09/01/2002 through 08/31/2018

This Add Space Amendment is made and entered into by and between the LESSOR, DUPONT CROSS PARK DRIVE LIMITED PARTNERSHIP, and LESSEE, STATE OF TEXAS acting by and through the Texas Facilities Commission, for and on behalf of the occupying agencies, the Health and Human Services Commission (HHSC), the Department of State Health Services (DSHS), and the Department of Aging and Disability Services (DADS).

Effective June 1, 2016 through August 31, 2018, the Texas Facilities Commission hereby adds 1,860 square feet of usable space to Health and Human Services Commission (HHSC), at $18.92 annual rate per square foot, for an additional rent amount of $2,931.95 per month.

In addition, Lessor shall provide off-street parking for an additional seven (7) vehicles on the building surface lot for a total of three hundred and seventeen (317) parking spaces.

The contract is amended to read a total of 79,485 usable square feet of space, for a total rent of $125,293.61 per month in accordance with the schedule below.

| AGENCY | TERM | SQ. FT OCCUPIED | ANNUAL RATE/SF | COST PER MONTH |
|---|---|---|---|---|
| HHSC (Office) | 05/01/2016 – 05/31/2016 | 54,022 | $18.97 | $ 85,398.69 |
| HHSC (Training) | 05/01/2016 – 05/31/2016 | 11,886 | $18.78 | $ 18,597.66 |
| DSHS (Office) | 05/01/2016 – 05/31/2016 | 9,730 | $18.78 | $ 15,224.23 |
| DADS (Office) | 05/01/2016 – 05/31/2016 | 1,987 | $18.97 | $ 3,141.08 |
| Total | | 77,625 | | $122,361.66 |
| | | | | |
| HHSC (Office) | 06/01/2016 – 08/31/2018 | 54,022 | $18.97 | $ 85,398.69 |
| HHSC (Training) | 06/01/2016 – 08/31/2018 | 11,886 | $18.78 | $ 18,597.66 |
| DSHS (Office) | 06/01/2016 – 08/31/2018 | 9,730 | $18.78 | $ 15,224.23 |
| DADS (Office) | 06/01/2016 – 08/31/2018 | 1,987 | $18.97 | $ 3,141.08 |
| HHSC (IT Add Space) | 06/01/2016 – 08/31/2018 | 1,860 | $18.92 | $ 2,931.95 |
| Total | | 79,485 | | $125,293.61 |
| | | | | |

ALL CONSTRUCTION, REPAIRS AND ALTERATIONS shall be completed by Lessor 15 days prior to June 1, 2016. Lessee shall have full access to the premises during that period, at no charge to Lessee, in order to prepare the Premises for occupancy by June 1, 2016.



**EXHIBIT A**  52

All non-economic terms and conditions of the lease shall be in force. Lessee may do whatever is necessary during said period to ensure it is able to commence normal business operations on June 1, 2016. CERTIFICATE OF OCCUPANCY (CO), if required and issued by the appropriate local authority, shall be provided by Lessor to Lessee 15 days prior to occupancy.

At Lessor's expense, the Lessor agrees to make the following upgrades to the lease space prior to May 15, 2016 as shown on Exhibit "A" attached: 1) Replace carpet throughout the premises, 2) Repaint the interior of the demised premises.

Lessor agrees that the Add Space portion of this lease will be eligible for its next CPI Escalation increase on September 1, 2016. Escalations for future increases for the Add Space shall be based on the anniversary date of the entire lease, September 1, and shall be calculated as described in the CPI Escalation Clause of the lease.

All other terms and conditions remain the same. This lease amendment is by mutual agreement between Lessee and Lessor. In signing this amendment, the Lessor certifies, the leased premises of the Add Space shall comply with all applicable federal, state, and local laws, statutes, ordinances, codes, rules and regulations.

TEXAS FACILITIES
COMMISSION APPROVED:

APPROVED BY:

Peter Maass, Deputy Executive
Director of Planning and Real Estate
Management Division

DuPont Cross Park Drive Limited Partnership
By: Richard E. DuPont

Date: 5-17-16

Date: 5/16/16

cc: Tim Horn, Health and Human Services Commission
Ginna Harris, Texas Department of Licensing and Regulation
Regina Roberson, Texas Department of Insurance-Fire Safety Inspections, State Fire
Marshal's Office

jc/km





PROPOSED LEASE AREA- SCHEME 2

1/8" = 1'-0"  -  1883 SF

**Exhibit A**



**EXHIBIT A**   54

**Chair**
Robert Thomas

**Commissioners**
William D. Darby
Patti Jones
Mike Novak
Jack W. Perry
Betty Reinbeck



**Executive Director**
Harvey Hilderbran

*Mailing address:*
P. O. Box 13047
Austin, TX 78711-3047
(512) 463-3446
www.tfc.state.tx.us

## ADD SPACE AMENDMENT
### Lease: 10292 Austin
### Term: 09/01/2002 through 08/31/2018

This Add Space Amendment is made and entered into by and between the LESSOR, DUPONT CROSS PARK DRIVE LIMITED PARTNERSHIP, and LESSEE, STATE OF TEXAS acting by and through the Texas Facilities Commission, for and on behalf of the occupying agencies, the Health and Human Services Commission (HHSC), the Department of State Health Services (DSHS), and the Department of Aging and Disability Services (DADS).

Effective August 1, 2016 through August 31, 2018, the Texas Facilities Commission hereby adds 4,400 square feet of usable space to Department of State Health Services (DSHS), at $18.92 annual rate per square foot, for an additional rent amount of $6,937.33 per month.

In addition, Lessor shall provide off-street parking for an additional twenty two (22) vehicles on the building surface lot for a total of three hundred thirty nine (339) parking spaces.

The contract is amended to read a total of 83,885 usable square feet of space, for a total rent of $132,230.94 per month in accordance with the schedule below.

| AGENCY | TERM | SQ. FT OCCUPIED | ANNUAL RATE/SF | COST PER MONTH |
|---|---|---|---|---|
| HHSC (Office) | 07/01/2016 – 07/31/2016 | 54,022 | $18.97 | $ 85,398.69 |
| HHSC (Training) | 07/01/2016 – 07/31/2016 | 11,886 | $18.78 | $ 18,597.66 |
| DSHS (Office) | 07/01/2016 – 07/31/2016 | 9,730 | $18.78 | $ 15,224.23 |
| DADS (Office) | 07/01/2016 – 07/31/2016 | 1,987 | $18.97 | $ 3,141.08 |
| HHSC (IT Office) | 07/01/2016 – 07/31/2016 | 1,860 | $18.92 | $ 2,931.95 |
| Total | | 79,485 | | $125,293.61 |
| | | | | |
| HHSC (Office) | 08/01/2016 – 08/31/2018 | 54,022 | $18.97 | $ 85,398.69 |
| HHSC (Training) | 08/01/2016 – 08/31/2018 | 11,886 | $18.78 | $ 18,597.66 |
| DSHS (Office) | 08/01/2016 – 08/31/2018 | 9,730 | $18.78 | $ 15,224.23 |
| DADS (Office) | 08/01/2016 – 08/31/2018 | 1,987 | $18.97 | $ 3,141.08 |
| HHSC (IT Office) | 08/01/2016 – 08/31/2018 | 1,860 | $18.92 | $ 2,931.95 |
| DSHS (Add Space) | 08/01/2016 – 08/31/2018 | 4,400 | $18.92 | $ 6,937.33 |
| Total | | 83,885 | | $132,230.94 |
| | | | | |



**EXHIBIT A** 55

APPENDIX B

ALL CONSTRUCTION, REPAIRS AND ALTERATIONS shall be completed by Lessor 15 days prior to August 1, 2016. Lessee shall have full access to the premises during that period, at no charge to Lessee, in order to prepare the Premises for occupancy by August 1, 2016.

All non-economic terms and conditions of the lease shall be in force. Lessee may do whatever is necessary during said period to ensure it is able to commence normal business operations on August 1, 2016. CERTIFICATE OF OCCUPANCY (CO), if required and issued by the appropriate local authority, shall be provided by Lessor to Lessee 15 days prior to occupancy.

At Lessor's expense, the Lessor agrees to make the following upgrades to the lease space prior to July 15, 2016 as shown on Exhibit "A" Floor Plan and Room Schedule attached and as mutually agreed by Lessee and Lessor: 1) Replace carpet throughout the premises, 2) Repaint the interior of the premises.

Lessor agrees that the Add Space portion of this lease will be eligible for its next CPI Escalation increase on September 1, 2016. Escalations for future increases for the Add Space shall be based on the anniversary date of the entire lease, September 1, and shall be calculated as described in the CPI Escalation Clause of the lease.

All other terms and conditions remain the same. This lease amendment is by mutual agreement between Lessee and Lessor. In signing this amendment, the Lessor certifies, the leased premises of the Add Space shall comply with all applicable federal, state, and local laws, statutes, ordinances, codes, rules and regulations.

TEXAS FACILITIES
COMMISSION APPROVED:

APPROVED BY:

Peter Maass, Deputy Executive
Director of Planning and Real Estate
Management Division

DuPont Cross Park Drive Limited Partnership
By: Richard E. DuPont

Date: 7-8-16

Date: 7/5/16

cc:   Tim Horn, Health and Human Services Commission
       Ginna Harris, Texas Department of Licensing and Regulation
       Regina Roberson, Texas Department of Insurance-Fire Safety Inspections, State Fire
       Marshal's Office

jc



Exhibit A – Floor Plan



Ste 175  4,400 sf



**EXHIBIT A**

## Room Schedule

### HHSC- MHSA - Cross Park Space Add Space

| | Full Time Employees | 22 | | Date 06/28/16 | |
|---|---|---|---|---|---|
| Item | Space Use/Room Name | Number | SF Per | SF Ext. | Adjacency/Comments |
| | Health and Human Services Commission | | | | |
| | Mental Health Substance Abuse | | | | |
| 1 | Regional Supervisor/Physician | 2 | 140 | 280 | office |
| 2 | Supervisors/Physician | 2 | 120 | 240 | |
| 3 | Professional | 11 | 80 | 880 | system furniture; adj. to supervisors |
| 4 | Technical | 5 | 64 | 320 | |
| 5 | Admin Tech | 2 | 48 | 96 | system furniture; adj. to supervisors |
| 6 | Office Machine Area | 1 | 60 | 60 | within system furniture aea |
| 7 | Office Supply Area | 1 | 50 | 50 | within system furniture aea |
| 8 | Break Area | 1 | 120 | 120 | central to staff |
| 9 | Waiting Area | 1 | 100 | 100 | at entrance; adj to reception area w/ 3 transaction counters |
| 10 | Open File Area | 1 | 180 | 180 | located in waiting area; adjacent to OES reception counter |
| 11 | Tele/Data Room | 1 | 120 | 120 | central to staff |
| 12 | Enclosed File Room | 1 | 120 | 120 | files |
| 13 | Conference Room | 1 | 340 | 340 | central to staff |
| 14 | Conference Room | 1 | 150 | 150 | central to staff |
| 15 | Tele/Data Room | 1 | 120 | 120 | secured |
| | | | | | |
| | | | Sub-total | 3,176 | |
| | Open Plan Circulation | | 45% | 813 | |
| | Built-Out Circulation | | 30% | 411 | |
| | | Total Circulation | | 1,224 | |
| | | | Total SF | 4,400 | |





**EXHIBIT A**

APPENDIX B

**Chair**
Robert D. Thomas

**Commissioners**
William D. Darby
Patti Jones
Mike Novak
Jack W. Perry
Betty Reinbeck



**Executive Director**
Harvey Hilderbran

*Mailing address*:
P. O. Box 13047
Austin, TX 78711-3047
(512) 463-3446
www.tfc.state.tx.us

## CPI LEASE PAYMENT NOTIFICATION
Lease: 10292 Austin
Term: 09/01/2002 through 08/31/2018

This agreement is made and entered into on this date, August 9, 2016, by the LESSEE, STATE OF TEXAS acting by and through the Texas Facilities Commission.

The Texas Facilities Commission approves a change in the total monthly rent for space leased due to a Consumer Price Index (CPI) adjustment in accordance with the lease contract.

Effective September 1, 2016, for the lease space occupied by the Health and Human Services Commission (HHSC), the Department of State Health Services (DSHS), and the Department of Aging and Disability Services (DADS), the total rent amount will be increased by $396.69 per month for 83,885 usable square feet, resulting in a new rent amount of $132,627.63 per month, in accordance with the schedule below:

| AGENCY | TERM | SQ. FT. OCCUPIED | ANNUAL RATE/SF | COST PER MONTH |
|---|---|---|---|---|
| HHSC-Office | 09/01/2016 – 08/31/2018 | 54,022 | $19.03 | $ 85,654.15 |
| HHSC-Training | 09/01/2016 – 08/31/2018 | 11,886 | $18.83 | $ 18,653.87 |
| DSHS-Office | 09/01/2016 – 08/31/2018 | 9,730 | $18.83 | $ 15,270.24 |
| DADS-Office | 09/01/2016 – 08/31/2018 | 1,987 | $19.03 | $ 3,150.48 |
| HHSC-IT Office | 09/01/2016 – 08/31/2018 | 1,860 | $18.97 | $ 2,940.75 |
| DSHS-Office | 09/01/2016 – 08/31/2018 | 4,400 | $18.98 | $ 6,958.14 |
| Total | | 83,885 | | $132,627.63 |

TEXAS FACILITIES
COMMISSION APPROVED:

Gayla Davis, Manager State Leasing
Services, Planning and Real Estate
Management Division

cc:   Tim Horn, Health and Human Services Commission
kin



**EXHIBIT A**

APPENDIX B

Chair
Robert D. Thomas

Commissioners
William D. Darby
Patti Jones
Mike Novak
Jack W. Perry
Betty Reinbeck



Executive Director
Harvey Hilderbran

*Mailing address:*
P. O. Box 13047
Austin, TX 78711-3047
(512) 463-3446
www.tfc.state.tx.us

## ADD SPACE AMENDMENT
Lease: 10292 Austin
Term: 09/01/2002 through 08/31/2018

This Add Space Amendment is made and entered into by and between the LESSOR, DUPONT CROSS PARK DRIVE LIMITED PARTNERSHIP, and LESSEE, STATE OF TEXAS acting by and through the Texas Facilities Commission, for and on behalf of the occupying agencies, the Health and Human Services Commission (HHSC), the Department of State Health Services (DSHS), and the Department of Aging and Disability Services (DADS).

Effective September 1, 2016 through August 31, 2018, the Texas Facilities Commission hereby adds 167 square feet of usable space to Department of State Health Services (DSHS), at $18.97 annual rate per square foot, for an additional rent amount of $264.00 per month.

The contract is amended to read a total of 84,052 usable square feet of space, for a total rent of $132,891.63 per month in accordance with the schedule below.

| AGENCY | TERM | SQ. FT OCCUPIED | ANNUAL RATE/SF | COST PER MONTH |
|---|---|---|---|---|
| HHSC (Office) | 08/01/2016 – 08/31/2016 | 54,022 | $18.97 | $ 85,398.69 |
| HHSC (Training) | 08/01/2016 – 08/31/2016 | 11,886 | $18.78 | $ 18,597.66 |
| DSHS (Office) | 08/01/2016 – 08/31/2016 | 9,730 | $18.78 | $ 15,224.23 |
| DADS (Office) | 08/01/2016 – 08/31/2016 | 1,987 | $18.97 | $ 3,141.08 |
| HHSC (IT Office) | 08/01/2016 – 08/31/2016 | 1,860 | $18.92 | $ 2,931.95 |
| DSHS (Office) | 08/01/2016 – 08/31/2016 | 4,400 | $18.92 | $ 6,937.33 |
| Total | | 83,885 | | $132,230.94 |
| | | | | |
| HHSC (Office) | 09/01/2016 – 08/31/2018 | 54,022 | $19.03 | $ 85,654.15 |
| HHSC (Training) | 09/01/2016 – 08/31/2018 | 11,886 | $18.83 | $ 18,653.87 |
| DSHS (Office) | 09/01/2016 – 08/31/2018 | 9,730 | $18.83 | $ 15,270.24 |
| DADS (Office) | 09/01/2016 – 08/31/2018 | 1,987 | $19.03 | $ 3,150.48 |
| HHSC (IT Office) | 09/01/2016 – 08/31/2018 | 1,860 | $18.97 | $ 2,940.75 |
| DSHS (Office) | 09/01/2016 – 08/31/2018 | 4,400 | $18.98 | $ 6,958.14 |
| DSHS (Add Space) | 09/01/2016 – 08/31/2018 | 167 | $18.97 | $ 264.00 |
| Total | | 84,052 | | $132,891.63 |
| | | | | |

ALL CONSTRUCTION, REPAIRS AND ALTERATIONS shall be completed by Lessor 5 days prior to September 1, 2016. Lessee shall have full access to the premises during that period, at no charge to Lessee, in order to prepare the Premises for occupancy by September 1, 2016.



Texas Facilities Commission
*Physical address:* 1711 San Jacinto Blvd, Austin, Texas 78701
★ *Planning and administering facilities in service to the State of Texas* ★

EXHIBIT A
60

APPENDIX B

All non-economic terms and conditions of the lease shall be in force. Lessee may do whatever is necessary during said period to ensure it is able to commence normal business operations on September 1, 2016. CERTIFICATE OF OCCUPANCY (CO), if required and issued by the appropriate local authority, shall be provided by Lessor to Lessee 5 days prior to occupancy.

At Lessor's expense, the Lessor agrees to make the following upgrades to the lease space prior to August 26, 2016, as shown on Exhibit A and as mutually agreed by Lessee and Lessor.

Lessor agrees that the Add Space portion of this lease will be eligible for its next CPI Escalation increase on September 1, 2017. Escalations for future increases for the Add Space shall be based on the anniversary date of the entire lease, September 1, and shall be calculated as described in the CPI Escalation Clause of the lease.

All other terms and conditions remain the same. This lease amendment is by mutual agreement between Lessee and Lessor. In signing this amendment, the Lessor certifies, the leased premises of the Add Space shall comply with all applicable federal, state, and local laws, statutes, ordinances, codes, rules and regulations.

TEXAS FACILITIES
COMMISSION APPROVED:

Peter Maass, Deputy Executive
Director of Planning and Real Estate
Management Division

Date: 8-26-16

APPROVED BY:

DuPont Cross Park Drive Limited Partnership
By: Richard E. DuPont

Date: 8/25/16

cc: Tim Horn, Health and Human Services Commission
Ginna Harris, Texas Department of Licensing and Regulation
Regina Roberson, Texas Department of Insurance-Fire Safety Inspections, State Fire Marshal's Office

jc



## EXHIBIT A

## Floor Plan



# EXHIBIT A

APPENDIX B

Room Schedule

| DSHS Storage Add Space -Cross Park | | | | | |
|---|---|---|---|---|---|
| Full Time Employees | 0 | | | | |
| Item | Space Use/Room Name | Number | SF Per | SF Ext. | Adjacency/Comments |
| 1 | Storage Room for DSHS | 1 | 167 X | 167 | |
| | | | Total SF | 167 | |



APPENDIX B

**Chair**
Robert D. Thomas

**Commissioners**
William D. Darby
Patti Jones
Mike Novak
Jack W. Perry
Betty Reinbeck
Joseph O. Slovacek



**Executive Director**
Harvey Hilderbran

*Mailing address:*
P. O. Box 13047
Austin, TX 78711-3047
(512) 463-3446
www.tfc.state.tx.us

## SPACE ALLOCATION NOTIFICATION
Lease: 10292 Austin
Term: 09/01/2002 through 08/31/2018

This agreement is made and entered into on this date, November 8, 2016, by the LESSEE, STATE OF TEXAS, acting by and through the Texas Facilities Commission.

The monthly rent and space allocation per agency is as follows:

| AGENCY | TERM | SQ. FT. OCCUPIED | ANNUAL RATE / SQ. FT. | COST PER MONTH |
|---|---|---|---|---|
| HHSC (Office) | 09/01/2016 – 08/31/2018 | 56,009 | $19.03 | $ 88,804.63 |
| HHSC (Training) | 09/01/2016 – 08/31/2018 | 11,886 | $18.83 | $ 18,653.87 |
| HHSC (Office) | 09/01/2016 – 08/31/2018 | 9,730 | $18.83 | $ 15,270.24 |
| HHSC (Office) | 09/01/2016 – 08/31/2018 | 4,400 | $18.98 | $ 6,958.14 |
| HHSC (Office) | 09/01/2016 – 08/31/2018 | 2,027 | $18.97 | $ 3,204.75 |
| **Total** | | **84,052** | | **$132,891.63** |

All other terms and conditions shall remain the same.

TEXAS FACILITIES
COMMISSION APPROVED:

Gayla Davis, Manager, State Leasing
Services, Planning and Real Estate
Management Division

cc: Tim Horn, Health and Human Services Commission
Ginna Harris, Texas Department of Licensing and Regulation
Regina Roberson, Texas Department of Insurance – Fire Safety Inspections, State Fire Marshal's Office

km



**EXHIBIT A** 64

APPENDIX B

Chair
Robert D. Thomas

Commissioners
William D. Darby
Patti Jones
Mike Novak
Jack W. Perry
Betty Reinbeck
Joseph O. Slovacek



Executive Director
Harvey Hilderbran

*Mailing address*:
P. O. Box 13047
Austin, TX 78711-3047
(512) 463-3446
www.tfc.state.tx.us

## CPI LEASE PAYMENT NOTIFICATION
Lease: 10292 Austin
Term: 09/01/2002 through 08/31/2018

This agreement is made and entered into on this date, August 14, 2017, by the LESSEE, STATE. OF TEXAS acting by and through the Texas Facilities Commission.

The Texas Facilities Commission approves a change in the total monthly rent for space leased due to a Consumer Price Index (CPI) adjustment in accordance with the lease contract.

Effective September 1, 2017, for the lease space occupied by the Health and Human Services Commission (HHSC), the total rent amount will be increased by $996.69 per month for 84,052 usable square feet, resulting in a new rent amount of $133,888.32 per month, in accordance with the schedule below:

| AGENCY | TERM | SQ. FT. OCCUPIED | ANNUAL RATE/SF | COST PER MONTH |
|---|---|---|---|---|
| HHSC (Office) | 09/01/2017 – 08/31/2018 | 56,009 | $19.17 | $ 89,468.78 |
| HHSC (Training) | 09/01/2017 – 08/31/2018 | 11,886 | $18.98 | $ 18,794.81 |
| HHSC (Office) | 09/01/2017 – 08/31/2018 | 9,730 | $18.98 | $ 15,385.62 |
| HHSC (Office) | 09/01/2017 – 08/31/2018 | 4,400 | $19.12 | $ 7,010.32 |
| HHSC (Office) | 09/01/2017 – 08/31/2018 | 2,027 | $19.11 | $ 3,228.79 |
| Total | | 84,052 | | $133,888.32 |

TEXAS FACILITIES
COMMISSION APPROVED:

Gayla Davis, Manager State Leasing
Services, Planning and Real Estate
Management Division

cc: Tim Horn, Health and Human Services Commission

km



**Texas Facilities Commission**
*Physical address*: 1711 San Jacinto Blvd, Austin, Texas 78701
*Planning and administering facilities in service to the State of Texas*

EXHIBIT A          65          APPENDIX B

**Chair**
Robert D. Thomas

**Commissioners**
William R. Allensworth
Steve D. Alvis
Patti C. Jones
Michael J. Novak
Rigoberto Villarreal



**Interim**
**Executive Director**
John Raff

*Mailing address*:
P. O. Box 13047
Austin, TX 78711-3047
(512) 463-3446
www.tfc.state.tx.us

## LEASE RENEWAL, ASSUMPTION OF UTILITIES, WITH TENANT IMPROVEMENTS & STATE-OWNED CANCELLATION AMENDMENT

Lease: 10292 Austin
Term: 09/01/2002 through 08/31/2018

This Lease Renewal, Assumption of Utilities, with Tenant Improvements & State-Owned Cancellation Amendment is made and entered into between the LESSOR, DUPONT CROSS PARK DRIVE LIMITED PARTNERSHIP, and LESSEE, STATE OF TEXAS acting by and through the Texas Facilities Commission, for and on behalf of the occupying agency, the Health and Human Services Commission (HHSC).

The term of the Lease is renewed for 120 months, from September 1, 2018 through August 31, 2028, as in accordance with the schedule below. Lessor agrees that CPI Escalation for the entire lease is cancelled and shall be of no further force and effect.

| AGENCY | TERM | SQ. FT OCCUPIED | ANNUAL RATE/SQ. FT. | COST PER MONTH |
|---|---|---|---|---|
| HHSC (Office) | 03/01/2018 – 08/31/2018 | 56,009 | $19.17 | $ 89,468.78 |
| HHSC (Training) | 03/01/2018 – 08/31/2018 | 11,886 | $18.98 | $ 18,794.81 |
| HHSC (Office) | 03/01/2018 – 08/31/2018 | 9,730 | $18.98 | $ 15,385.62 |
| HHSC (Office) | 03/01/2018 – 08/31/2018 | 4,400 | $19.12 | $ 7,010.32 |
| HHSC (Office) | 03/01/2018 – 08/31/2018 | 2,027 | $19.11 | $ 3,228.79 |
| **Total** | | **84,052** | | **$133,888.32** |
| | | | | |
| HHSC (Office) | 09/01/2018 – 08/31/2019 | 72,166 | $21.48 | $129,177.14 |
| HHSC (Training) | 09/01/2018 – 08/31/2019 | 11,886 | $21.48 | $ 21,275.94 |
| | | 84,052 | | $150,453.08 |
| | | | | |
| HHSC (Office) | 09/01/2019 – 08/31/2020 | 72,166 | $21.98 | $132,184.06 |
| HHSC (Training) | 09/01/2019 – 08/31/2020 | 11,886 | $21.98 | $ 21,771.19 |
| | | 84,052 | | $153,955.25 |
| | | | | |
| HHSC (Office) | 09/01/2020 – 08/31/2021 | 72,166 | $22.48 | $135,190.97 |
| HHSC (Training) | 09/01/2020 – 08/31/2021 | 11,886 | $22.48 | $ 22,266.44 |
| | | 84,052 | | $157,457.41 |
| | | | | |
| HHSC (Office) | 09/01/2021 – 08/31/2022 | 72,166 | $22.98 | $138,197.89 |
| HHSC (Training) | 09/01/2021 – 08/31/2022 | 11,886 | $22.98 | $ 22,761.69 |
| | | 84,052 | | $160,959.58 |
| | | | | |



**EXHIBIT A** 66

APPENDIX B

| | | | | |
|---|---|---|---|---|
| HHSC (Office) | 09/01/2022 – 08/31/2023 | 72,166 | $23.48 | $141,204.81 |
| HHSC (Training) | 09/01/2022 – 08/31/2023 | 11,886 | $23.48 | $ 23,256.94 |
| | | 84,052 | | $164,461.75 |
| | | | | |
| HHSC (Office) | 09/01/2023 – 08/31/2024 | 72,166 | $23.98 | $144,211.72 |
| HHSC (Training) | 09/01/2023 – 08/31/2024 | 11,886 | $23.98 | $ 23,752.19 |
| | | 84,052 | | $167,963.91 |
| | | | | |
| HHSC (Office) | 09/01/2024 – 08/31/2025 | 72,166 | $24.48 | $147,218.64 |
| HHSC (Training) | 09/01/2024 – 08/31/2025 | 11,886 | $24.48 | $ 24,247.44 |
| | | 84,052 | | $171,466.08 |
| | | | | |
| HHSC (Office) | 09/01/2025 – 08/31/2026 | 72,166 | $24.98 | $150,225.56 |
| HHSC (Training) | 09/01/2025 – 08/31/2026 | 11,886 | $24.98 | $ 24,742.69 |
| | | 84,052 | | $174,968.25 |
| | | | | |
| HHSC (Office) | 09/01/2026 – 08/31/2027 | 72,166 | $25.48 | $153,232.47 |
| HHSC (Training) | 09/01/2026 – 08/31/2027 | 11,886 | $25.48 | $ 25,237.94 |
| | | 84,052 | | $178,470.41 |
| | | | | |
| HHSC (Office) | 09/01/2027 – 08/31/2028 | 72,166 | $25.98 | $156,239.39 |
| HHSC (Training) | 09/01/2027 – 08/31/2028 | 11,886 | $25.98 | $ 25,733.19 |
| | | 84,052 | | $181,972.58 |

The Texas Facilities Commission shall have the right to cancel the portion of Training Space for 11,886 square feet, by giving to the Lessor written notice of such cancellation at least 180 days prior to the desired cancellation. This portion of the Lease may not be cancelled prior to February 28, 2021.

The Texas Facilities Commission shall have the right to cancel the portion of HHSC Space for 72,166 square feet, by giving to the Lessor written notice of such cancellation at least 365 days prior to the desired cancellation. This portion of the Lease may not be cancelled prior to November 30, 2025.

At Lessor's expense, the Lessor agrees to make upgrades to the leased premises prior to December 31, 2018 in accordance with the attached Exhibit "A" HHSC Scope of Work.

Effective September 1, 2018 through August 31, 2028, **Utilities** shall be paid by **LESSEE.** Lessor shall continue to provide, at Lessor's expense, access to all utilities services, meters, and connections necessary for the proper and intended use of the space. These utilities include telecommunications facilities, continuous hot and cold water, wastewater, electricity and natural gas, if required for heating and or cooling.



**EXHIBIT A**

67

The date of this Lease Renewal, Assumption of Utilities, with Tenant Improvements & State-Owned Cancellation Amendment is the date that it is signed by Lessee's duly authorized representative; however, this Lease Renewal, Assumption of Utilities, with Tenant Improvements & State-Owned Cancellation Amendment is not effective until the majority approval by a quorum of the Commission members of the Texas Facilities Commission. If the Commission does not approve the Lease, it may be terminated by the State of Texas without liability upon 30 day notice to the Lessor.

All other terms and conditions of the Lease remain the same and continue in full force and effect. This Lease Renewal, Assumption of Utilities, with Tenant Improvements & State-Owned Cancellation Amendment is by mutual agreement between Lessee and Lessor.

APPROVED BY:
TEXAS FACILITIES COMMISSION

Gayla Davis, Manager, State Leasing
Services, Planning & Real Estate
Management Division

Date: 2·14·18

APPROVED BY:
DuPont Cross Park Drive Limited Partnership

By:
Name: Richard E. DuPont

Date: 9/13/18

cc:     Tim Horn, Health and Human Services Commission
        Ginna Harris, Texas Department of Licensing and Regulation
        Regina Roberson, Texas Department of Insurance – Fire Safety Inspections, State Fire
        Marshal's Office

jc/gd

RECEIVED
FEB 14 2018
LEASING SVCS



**EXHIBIT A**

68

APPENDIX B

## Exhibit A

## HHSC Scope of Work

1. Re-carpet and paint suite 125 East & West.
2. Re-carpet and paint the 2nd floor.



**EXHIBIT A**

CIVIL PRACTICE AND REMEDIES CODE

TITLE 5. GOVERNMENTAL LIABILITY

CHAPTER 114.  ADJUDICATION OF CLAIMS ARISING UNDER WRITTEN

CONTRACTS WITH STATE AGENCIES

Sec. 114.001.  DEFINITIONS.  In this chapter:

(1)  "Adjudication" of a claim means the bringing of a civil suit and prosecution to final judgment in county or state court.

(2)  "Contract subject to this chapter" means a written contract stating the essential terms of the agreement for providing goods or services to the state agency that is properly executed on behalf of the state agency. The term does not include a contract that is subject to Section 201.112, Transportation Code.

(3)  "State agency" means an agency, department, commission, bureau, board, office, council, court, or other entity that is in any branch of state government and that is created by the constitution or a statute of this state, including a university system or a system of higher education.  The term does not include a county, municipality, court of a county or municipality, special purpose district, or other political subdivision of this state.

Added by Acts 2013, 83rd Leg., R.S., Ch. 1260 (H.B. 586), Sec. 1, eff. September 1, 2013.


Sec. 114.002.  APPLICABILITY.  This chapter applies only to a claim for breach of a written contract for engineering, architectural, or construction services or for materials related to engineering, architectural, or construction services brought by a party to the written contract, in which the amount in controversy is not less than $250,000, excluding penalties, costs, expenses, prejudgment interest, and attorney's fees.

Added by Acts 2013, 83rd Leg., R.S., Ch. 1260 (H.B. 586), Sec. 1, eff. September 1, 2013.


Sec. 114.003.  WAIVER OF IMMUNITY TO SUIT FOR CERTAIN CLAIMS.  A state agency that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this chapter waives

sovereign immunity to suit for the purpose of adjudicating a claim for breach of an express provision of the contract, subject to the terms and conditions of this chapter.

Added by Acts 2013, 83rd Leg., R.S., Ch. 1260 (H.B. 586), Sec. 1, eff. September 1, 2013.


Sec. 114.004.  LIMITATIONS ON ADJUDICATION AWARDS.  (a)  The total amount of money awarded in an adjudication brought against a state agency for breach of an express provision of a contract subject to this chapter is limited to the following:

(1)  the balance due and owed by the state agency under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration if the contract expressly provides for that compensation;

(2)  the amount owed for written change orders;

(3)  reasonable and necessary attorney's fees based on an hourly rate that are equitable and just if the contract expressly provides that recovery of attorney's fees is available to all parties to the contract; and

(4)  interest at the rate specified by the contract or, if a rate is not specified, the rate for postjudgment interest under Section 304.003(c), Finance Code, but not to exceed 10 percent.

(b)  Damages awarded in an adjudication brought against a state agency arising under a contract subject to this chapter may not include:

(1)  consequential damages;

(2)  exemplary damages; or

(3)  damages for unabsorbed home office overhead.

Added by Acts 2013, 83rd Leg., R.S., Ch. 1260 (H.B. 586), Sec. 1, eff. September 1, 2013.


Sec. 114.005.  CONTRACTUAL ADJUDICATION PROCEDURES ENFORCEABLE. Adjudication procedures, including requirements for serving notices or engaging in alternative dispute resolution proceedings before bringing a suit or an arbitration proceeding, that are stated in the contract subject to this chapter or that are established by the state agency and expressly incorporated into the contract are enforceable, except to the extent those procedures conflict with the terms of this chapter.

Appendix C

Added by Acts 2013, 83rd Leg., R.S., Ch. 1260 (H.B. 586), Sec. 1, eff. September 1, 2013.


        Sec. 114.006.  NO WAIVER OF OTHER DEFENSES.  This chapter does not waive a defense or a limitation on damages available to a party to a contract, other than a bar against suit based on sovereign immunity.

Added by Acts 2013, 83rd Leg., R.S., Ch. 1260 (H.B. 586), Sec. 1, eff. September 1, 2013.


        Sec. 114.007.  NO WAIVER OF IMMUNITY TO SUIT IN FEDERAL COURT.  This chapter does not waive sovereign immunity to suit in federal court.

Added by Acts 2013, 83rd Leg., R.S., Ch. 1260 (H.B. 586), Sec. 1, eff. September 1, 2013.


        Sec. 114.008.  NO WAIVER OF IMMUNITY TO SUIT FOR TORT LIABILITY.  This chapter does not waive sovereign immunity to a claim arising from a cause of action for negligence, fraud, tortious interference with a contract, or any other tort.

Added by Acts 2013, 83rd Leg., R.S., Ch. 1260 (H.B. 586), Sec. 1, eff. September 1, 2013.


        Sec. 114.009.  EMPLOYMENT CONTRACTS EXEMPT.  This chapter does not apply to an employment contract between a state agency and an employee of that agency.

Added by Acts 2013, 83rd Leg., R.S., Ch. 1260 (H.B. 586), Sec. 1, eff. September 1, 2013.


        Sec. 114.010.  VENUE.  A suit under this chapter may be brought in a district court in:
            (1)  a county in which the events or omissions giving rise to the claim occurred; or
            (2)  a county in which the principal office of the state agency is located.

Added by Acts 2013, 83rd Leg., R.S., Ch. 1260 (H.B. 586), Sec. 1, eff. September 1, 2013.

Appendix C

Sec. 114.011.  LIMITATION ON REMEDIES.  Satisfaction and payment of any judgment under this chapter may not be paid from funds appropriated to the state agency from general revenue unless the funds are specifically appropriated for that purpose.  Property of the state or any agency, department, or office of the state is not subject to seizure, attachment, garnishment, or any other creditors' remedy to satisfy a judgment taken under this chapter.

Added by Acts 2013, 83rd Leg., R.S., Ch. 1260 (H.B. 586), Sec. 1, eff. September 1, 2013.


Sec. 114.012.  EXCLUSIVE REMEDY.  A claim to which this chapter applies may not be brought under Chapter 2260, Government Code, against the state or a unit of state government as defined by Section 2260.001, Government Code.

Added by Acts 2013, 83rd Leg., R.S., Ch. 1260 (H.B. 586), Sec. 1, eff. September 1, 2013.


Sec. 114.013.  REPORT.  Before January 1 of each even-numbered year, each state agency shall report to the governor, the comptroller, and each house of the legislature the cost of defense to the state agency and the office of the attorney general in an adjudication brought against the agency under a contract subject to this chapter.  Included in the report shall be the amount claimed in any adjudication pending on the date of the report.

Added by Acts 2013, 83rd Leg., R.S., Ch. 1260 (H.B. 586), Sec. 1, eff. September 1, 2013.

Appendix C

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Alyssa Bixby-Lawson on behalf of Alyssa Bixby-Lawson
Bar No. 24122680
alyssa.bixby-lawson@oag.texas.gov
Envelope ID: 98557006
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Brief of Appellants
Status as of 3/18/2025 7:26 AM CST

Associated Case Party: State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Victoria Gomez | | victoria.gomez@oag.texas.gov | 3/17/2025 7:19:07 PM | SENT |
| Alyssa Bixby-Lawson | | alyssa.bixby-lawson@oag.texas.gov | 3/17/2025 7:19:07 PM | SENT |

Associated Case Party: 8317 Cross Park, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kemp Kasling | | kkasling@kaslinglaw.com | 3/17/2025 7:19:07 PM | SENT |